Aida E. B. Kulp, Appellant, *v.* T. Jefferson March, Executor of the Last Will and Testament of Henry G. Kulp, deceased.

[Marked to be reported.]

| | |
|---|---|
| 181 | 627 |
| c 22 SC | 597 |
| 181 | 627 |
| 31 SC | 438 |
| 181 | 627 |
| 217 | 206 |

*Insurance — Life insurance—Assignment of policies—Gift—Delivery—Possession—Husband and wife.*

In an interpleader, between the executor and the widow of the insured, to determine the title to certain policies of insurance, it appeared that the insured in his lifetime had executed a regular assignment of the policy in writing, under seal, to his wife. The assignment and the policies were found in the insured's safe after his death. Two witnesses testified that when the insured was on his death-bed he said that he had transferred his life insurance to his wife, and he requested his wife's brother to get the insurance money as soon as possible, as his wife would need the money. He also stated that the policies were in the safe among his private papers. After his death the policies and the assignment were found in his office safe, in an envelope with his wife's name indorsed thereon. *Held,* that the evidence was sufficient to submit to the jury with instructions that they should find for the widow if they found a delivery of the assignment or the policies.

Argued Feb. 3, 1897. Appeals, Nos. 592 and 593, Jan. T., 1896, by plaintiff, from judgments of C. P. Montgomery Co., Dec. T., 1896, Nos. 6 and 7, on verdicts for defendant. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Interpleader to determine the ownership of certain policies of life insurance. Before WEAND, J.

T. Jefferson March, executor of Henry G. Kulp, deceased, brought one suit against the Penn Mutual Life Insurance Company and another against the Mutual Life Insurance Company, of New York, on separate policies. The widow intervened in both cases, the money was paid into court by the insurance companies, and interpleaders were framed between the widow and the executor. At the trial, the widow claimed the policies under the following assignment in writing:

" I, Henry G. Kulp, hereby assign, Transfer and set over unto Aida E. B. Kulp all my right to the interest in the within attached policies of life insurance, as follows:

"Policy No. 243,658 in the Mutual Life Insurance
                Company of New York for   .   . $5,000
"     "   243,659 in the Mutual Life Insurance
                Company of New York for   .    5,000
"     "   293,234 in the Mutual Life Insurance
                Company of New York for   .   . 1,000
"     "    23,033 in Penn Mutual Life Insur-
                ance Company of Philadelphia for .  3,000
"     "    15,056 in Royal Arcanum   .    .   3,000

" To have and to hold to her forever, hereby giving her full
power and authority to ask, demand, collect and sue for the
same with the same force and effect as I myself could do.

" Witness my hand and seal this Nineteenth day of September, A. D. 1893.

                          " HENRY G. KULP. [SEAL]

" Witness present:
      " IRVIN G. KULP."

Other facts appear by the opinion of the Supreme Court.

The court gave binding instructions in favor of the defendant.

Verdicts and judgments for defendant.

*Error assigned* was above instructions.

*Montgomery Evans* and *N. H. Larzelere*, with them *Henry M.
Brownback*, for appellant.—The law of this country looks with
favor upon insurance originally effected in favor of, or subsequently assigned, to those dependent upon the life of the assured: Bliss on Life Insurance, sec. 331; Act of April 15, 1868,
P. L. 103.

A deed of assignment of the policies dispensed with the necessity of delivery of the policies themselves: Thornton on Gifts,
sec. 189; 8 Am. & Eng. Ency. of Law, 1331; Malone's Est., 8
W. N. C. 179; Grangiac v. Arden, 10 Johns. 393; Reid v. Colcock, 1 Nott & McCord, 592; Carradine v. Collins, 7 Smedes
& Marshall, 428; Caldwell v. Wilson, 2 Spear's, L. 75; Hansell v. Bryan, 19 Geo. 167; Harris v. Hopkins, 43 Mich. 272.

That a completed gift may be proved by the declarations of
the donor is the established law of this court, and the meaning

of the declarations is for the jury: Malone's Est., 8 W. N. C. 179; Sourwine v. Claypool, 138 Pa. 126; Osterhout's Est., 148 Pa. 223; Jacques v. Fourthman, 137 Pa. 428; Thornton on Gifts, sec. 224.

Whenever a party has the power to do a thing, and means to do it, the instrument he employs shall be so construed as to give effect to his intention: Bond v. Bunting, 78 Pa. 210; Crawford's App., 61 Pa. 62; Turner v. Warren, 160 Pa. 343.

In Trough's Estate, 75 Pa. 115, the written declaration of assignor negatived the possibility of delivery having been made, since the direction was to deliver after death. In Scott v. Dickson, 108 Pa. 6, there was no suggestion of a delivery to the donee. In Scott v. Lauman, 104 Pa. 593, the decedent delivered the assignment to his own attorney, with instructions to keep it in his safe. There was no direction to deliver, and the continued possession by the attorney was the possession of the client, the assignee having no knowledge of the transaction.

*Miller D. Evans* and *Franklin March*, with them *J. H. Maxwell*, for appellee.—We submit that under the opinion in Scott v. Reed et al., 153 Pa. 14, the proof in this case, as to delivery, should be especially clear and satisfactory: Herr's App., 5 W. & S. 495; Act of April 15, 1868, P. L. 103.

Gifts between husband and wife are valid and not uncommon, but the donor's intention to divest himself of the property, and the carrying out of that intention by delivery, must be clearly proved by the donee, wife or husband, as the case may be: 9 Am. & Eng. Ency. of Law, 804. In Osterhout's Estate, 148 Pa. 223, Sourwine v. Claypool, 138 Pa. 126, Jacques v. Fourthman, 137 Pa. 428, Malone's Estate, 8 W. N. C. 179, and Maderia's Est., 15 W. N. C. 318, there was evidence of delivery, in addition to declaration of donor.

The evidence in this case was insufficient to show delivery: Robertson v. Robertson, 9 Watts, 32–42.

In Blake v. Jones, 1 Bailey's Eq. 141, cited by appellant, it is held that " the declarations of the donor, made prior to the time of the alleged gift, especially, if frequently repeated, showing a clear intention to give, followed after that time by declarations that he had given, are sufficient evidence of actual delivery." In Grangiac v. Arden, 10 Johns. 293, and Reid v. Colcock, 1

Nott & McCord, 592, also cited by appellant, the declarations are likewise confirmatory of an act done or declarations made prior to, at the time of, and subsequent to, the date of the alleged gift. Viewed in the light of the decisions, it would be impossible to imagine a case so completely barren of the essentials necessary to constitute a gift inter vivos as this, for it must be that or nothing: Walsh's App., 122 Pa. 177; Jacques v. Fourthman, 137 Pa. 428.

It is an error to submit a question to the jury without evidence sufficient to warrant the finding: Gas Co. v. Lynch, 118 Pa. 362; Munn v. Pittsburg, 40 Pa. 371; Wynkoop v. Cooch, 89 Pa. 450.

OPINION BY MR. JUSTICE GREEN, July 15, 1897:

In considering the question at issue in this case, it must be carefully borne in mind that the deceased, Henry G. Kulp, had formally executed a regular assignment in writing and under seal, to his wife, the plaintiff, of all the policies of life insurance involved in the present contention. It was a perfect instrument and carried all his interest in the policies, naming each one of them by a full description, and it was regularly signed and sealed, and subscribed by an attesting witness. In its terms it was an absolute assignment and transfer without any qualification or condition whatever; it was expressed in the present tense, and was as efficacious to pass the whole title of the assignor as any deed in fee simple for real estate could possibly be. There is not a solitary question as to its legal efficacy except the question of delivery, and that question only arises in view of its character as a gift. But in its aspect as a gift it has certain attending circumstances and surroundings, which tend greatly to narrow the limits of the inquiry, and to give it a special character not usually incident in this class of cases. For instance, it is not the case of a parol gift of a chattel, or of a security, where there can be no pretense of the passage of the title, unless the thing given is actually produced and handed over to the donee. In all that class of cases, and they are by far the most numerous, the corporeal tradition of the gift is the very essence and foundation of the title. It is that alone which passes the title, and hence it must exist or no title passes. But here there is no question as to the intent of the donor to transfer all the title he

had, to the donee, and no evidence is required on that subject. He has actually done so in the most efficient manner possible. In all such cases the question of delivery is of far less significance and importance than it is in all the cases where the physical delivery is the means of transmutation of the title. There the physical delivery must actually take place or there is no change of title. But where the title has been actually conveyed by a solemn instrument of writing, duly executed and sealed, the question is rather as to the delivery of the instrument than the delivery of the substance of the gift. And, as is well known to the profession, the delivery of the instrument presents a very different question from the delivery of the subject-matter of the instrument. It is largely a question of intent. It may be accomplished without the instrument being handed to the grantee at all. It may be left with other persons or at a certain place, and its proof may be established by the verbal declarations of the grantor. In the case of a deed for land, if it be placed on record by the grantor, that alone is sufficient evidence of delivery, though the deed itself was never handed to the grantee. Then too it is a question in this case of a delivery by a husband to a wife. It is well settled that the possession by the husband of his wife's deeds and securities, is regarded by the law as consistent with a possession in her, and very slight evidence of such a possession is sufficient to vest her title.

Some of the authorities illustrating the foregoing statements are as follows: In Jacques v. Fourthman, 137 Pa. 428, we held that when the plaintiff claimed property in notes as a gift from her deceased brother, and proved her possession of them immediately after his death, with evidence of acts and declarations of the deceased in his lifetime and other circumstances appropriate to a gift of them, as alleged, it was error to refuse to submit the question of fact as to the delivery to the determination of the jury. In this case there was no assignment of the notes to the plaintiff, and there was no proof of their actual delivery. But there was some proof that they were at least in the custody of the plaintiff, and certain declarations of the deceased relating to them we held to be sufficient to carry the question of delivery to the jury. We said, "What did the decedent mean when he said, 'Julia where are those notes I gave you?' Did he mean that he had given them to the plain-

tiff? Certainly the court cannot say as a matter of law that he did not. The word used was entirely appropriate to express the fact of the gift. The actual meaning of the declarant must be determined by the jury, and if they decided that a gift was meant, could they not lawfully do so? Would such a meaning be an absolutely illegitimate inference? We cannot say so."

In Reese v. Reese, 157 Pa. 200, we held that the transfer of a judgment by a husband to a wife at a time when the husband is out of debt is a valid gift. The consideration of natural love and affection will sustain it although no money is paid for it. We held also that the subsequent declarations and misrepresentations made by the husband in order to procure goods would not affect the wife's title if she was not a party to them.

In Livingood's Est., 167 Pa. 191, the decedent gave to his wife a mortgage and judgment bond which he held against his brother, directing her to deliver them to the brother. The securities were delivered to the brother, who returned them to decedent's wife, with a request that she should keep them for him. They were then placed in a box in which decedent kept his securities. Decedent repeatedly declared it to be his intention to forgive the debts for which they were given and, in a paper requesting his brother to make oath to a tax return, stated that the judgment and mortgage against his brother were satisfied. Held that the evidence was sufficient to sustain a finding that these debts had been forgiven by the decedent. There was no assignment or transfer of the securities, and after the death of the decedent they were found in his own box and amongst his other securities. Yet we held the parol testimony sufficient to sustain the gift.

In Gish v. Brown, 171 Pa. 479, we decided that where a father delivered a deed to a third person with absolute direction to hold until his death, and then deliver it to his son who was the grantee in the deed, a delivery to the son after the grantor's death by the custodian of the deed passed a good title to the son. By the verbal testimony it appeared that the grantor put the deed and a bond from the grantee to him for $15,000 and another agreement between the father and son into an envelope which he sealed and then delivered it to the third person, saying, " I will make a deed for the place to Henry. I will give this to you (Rutt) to hold." He said also that the farm should

be Henry's, and after he handed the papers to Rutt he said, " Now the farm is gone," and instructed Rutt to hold the papers until after his death and then to give them to his son Henry. The court below left the question of delivery to the jury and we sustained the court in so doing.

In Wagoner's Est., Dorlan's Appeal, 174 Pa. 558, the facts were that a niece kept house for her uncle during the last fifteen years of his life. She did the household work, took care of cows and worked in the garden. About eighteen months before the uncle's death he called on a justice of the peace and executed a bond in favor of his niece in the sum of $2,000 payable to her absolutely in one year with interest at the rate of five per cent, with a warrant of attorney appended. The bond was handed to the justice to be kept by him and delivered to the niece after the uncle's death. Sometime after the bond had been deposited with the justice the uncle told his niece that ·there was a bond of $2,000 at the squire's and that she was to leave it there as long as he lived, and at his death she was to go and get it. A few days after the uncle's death the niece called for the bond and the justice gave it to her. We sustained the bond as a gift and held there was a sufficient delivery to execute the gift to the niece, and that the contingency that the gift was not to take effect except in case of the survivorship of the niece did not render it void.

In Malone's Est., 8 W. N. C. 179, the instrument in question was a life insurance policy which was ·made in the name of the husband before marriage, but was claimed by the wife after the husband's death. There was no assignment of the policy to the · wife, but there was proof of declarations of the husband that he had given the policy to his wife. It was found after his death in the safe of the firm of which he was a member, and he had represented to his creditors that he owned the policy. The ·court below said, " The delivery may be proved by the declaration of the donor, just as the gift itself may be ; and when the donor declares that he had given it at a previous time and that the donee had then become the owner, it is implied that delivery, and indeed, every other formality necessary to create a complete gift, had taken place. The law always presumes knowledge of its requirements." This case was affirmed by this court in 38 Leg. Int. 303, not reported in state reports.

In Osterhout's Est., 148 Pa. 223, the court below charged as follows: "It is contended here on the part of the counsel for the plaintiff that a gift cannot be proven by the declarations of a donor made at a time different from that when it is claimed that the gift was made, but we say to you that a gift may be proven by the declarations of the donor, and if you believe that Mr. Osterhout said to R. T. Handrick that he had given these bonds to Eugene Handrick, and you credit that testimony, you may find from his declaration that he had at some time previously given these bonds to Eugene S. Handrick, the defendant." This court held on appeal that the evidence was for the jury.

In Sourwine v. Claypool, 138 Pa. 126, a daughter claimed that a certain sum of $400 which had been contributed by her father to her husband in the purchase of some land by the latter, and which was subsequently sold by the sheriff and purchased by the father, had been advanced originally by him as a gift to her. The evidence in support of the claim consisted of declarations by the father, made to strangers, of his having given this money to his daughter. The verdict was in her favor, and the defendant claimed that the admissions of the donor were not sufficient evidence to prove the gift. CLARK, J., delivering the opinion of this court said, "This is not a case where the plaintiff seeks to establish a parol gift or sale of land, and the deliberate admissions of the decedent, if they are sufficiently clear, full and precise, and relate to existing facts, and not to a mere intention, are competent to establish the fact."

In view of the provisions of the Act of April 15, 1868, P. L. 103, in relation to life insurance policies assigned by husbands to their wives, it may well be contended that the policy of our law favors such transactions, even where the rights of creditors may be affected. The words of the act are as follows, "All policies of life insurance or annuities upon the life of any person which may hereafter mature, and which have been or shall be taken for the benefit of, or *bona fide* assigned to, the wife or children or any relative dependent upon such person, shall be vested in such wife or children or other relative full and clear from all claims of the creditors of such person." The assignment of the policy in such a case is alone sufficient to vest the title in the wife, even as against creditors, if it is bona fide. As there is not the least question as to the bona fides of the assign-

ment in this case, that requirement of the act is fully complied with.

In regard to the possession of the papers, we said in Turner v. Warren, 160 Pa. 343, "That a husband should place his wife's papers in his safe and that they should remain there until his death, needs no explanation, for it is entirely free from suspicion or doubt. As between strangers it would be improbable that the grantee in a deed would permit it after delivery to remain in the possession of the grantor. It is not so, however, where the grantee is the wife of the grantor, and he has a safe for the keeping of valuable papers. Care would in such case prompt the wife to deposit the deed in her husband's safe." In Thornton on Gifts, sec. 169, the author says, "The relation of husband to wife is so close and their every day life is so blended that it is often difficult to tell when the husband has perfected a gift to his wife by delivery. The law takes cognizance of these relationships, of the daily contact of such donor and donee, of the blending, as it were, of their daily walks and acts, and will construe an act to amount to a delivery where it often would not if the donor and donee were not members of the same family. The law does not dispense with an actual or constructive delivery, but it accepts the acts of the donor, if a clear intent to give is shown, as amounting to a delivery, when it would not do so if the donor and donee occupied separate habitations and were not members of the same family." It was said in Malone's Estate, supra, "If a valid gift was made, it is of no importance, as between husband and wife, that the former subsequently became the custodian. In such case he holds as trustee without the right to divest his wife's ownership."

Bearing in mind the principles and distinctions heretofore stated, and the fact that the assignment of the policies is absolute on its face, and transfers all the interest of the husband to the wife, and considering also that relation as between these parties, let us review the testimony on the subject of delivery. The wife being incompetent to testify as to what took place between her husband and herself, allowance must be made for that circumstance in considering the effect of the whole of the testimony.

Mr. Henry M. Brownbank, a brother of Mrs. Kulp, was examined on the trial and testified that he was with Mr. Kulp on

Sunday evening before he died on the Tuesday following, and had a conversation with him. He said there were two conversations, at the first of which Dr. Mays, Mrs. Kulp, his mother, Mrs. Brownbank, and himself were present. He said, "I was sent for and came over to his bedroom. He was lying on the bed. I sat down on the other side of the bed and he said to me, '.Harry I transferred all my life insurance, amounting to over $32,000, to Aida. The policies are in my safe with my private papers. I want you to get the insurance as soon after my death as you can, as Aida will need money.' . . . After his death, in consequence of that direction, I went to secure these policies and found the policies. . . . Mr. Kulp had in his possession other property of his wife's at the time of his death."

Mrs. Ellen Brownbank, the mother of Mrs. Kulp, was also examined and testified that she was present at the time spoken of by her son, and heard what was said. "He said he had transferred his life insurance all to Aida, and he said that Harry should get the insurance as soon as he could, because Aida would need money. . . . She was in the room all the time at that time. Mr. Kulp did not say anything to me. He said it to Harry. Harry was sitting on the bed with his hand in his, and he was talking to Harry. I heard it. . . . He said, 'my policies are in the safe among my private papers.' He said, 'I want you to get the insurance as soon as you can, because Aida will need money.' . . . Preceding that he said, 'I transferred all my life insurance to Aida, amounting to over $30,000, and the policies are in my safe among my private papers.' "

There was no contradiction of the foregoing testimony, and as the court below took it all away from the jury, it must be assumed to be true. Upon that assumption several considerations arise, all of which would have been for the jury. The assignment was found in the safe after Mr. Kulp's death by Mr. Brownbank. It was inclosed in a sealed envelope. Mr. Brownbank said as to that, "Have in my hand the assignment that has been offered in evidence and an envelope. The assignment was inside of the envelope. The envelope was in Mr. Kulp's private safe in his counting room in Pottstown. With this assignment were the policies so far as I recall it. . . . I took it (the envelope) and opened it; found it had my sister's name indorsed upon it; opened it and found that it was the assign-

ment." From all the testimony it is obvious that Mr. Kulp intended to assign and transfer the policies to his wife absolutely, because that is just what he did do, when he executed the assignment. When he said he had transferred all his policies to his wife, he spoke of it as a past fact, and thereby implied that he had done all that was necessary to make a good legal transfer. And when he said to his wife's brother, in the presence of his wife, that the policies were in his safe among his private papers, and he wanted his wife's brother to get the insurance money as soon as possible, because his wife would need money, did he not then and there authorize his brother to take possession of the policies and get the money due on them for her and pay it over to her? When she tacitly acquiesced in this arrangement, in the presence of her husband, was there anything wanting to complete the delivery of a chose in action, the absolute title to which had already been formally assigned and transferred to her? We think not, and we think that the jury would have been justified in inferring such a delivery of the assignment and the policies as would sustain such a transfer. Nor do we think, in view of the fact that it was his own wife to whom the formal deed of assignment and transfer had been already made, that there was any inconsistency in the fact that the papers were kept in his private safe. It was a very proper place for them to be, and no necessary inference of a non-delivery flows from that fact. All the facts relating to that subject were in parol and were proper for the consideration of the jury. They were entirely consistent with the theory of a previous delivery, and indeed they were very inconsistent with any theory that the title to the policies still remained in the husband. Great force is added to this by his positive direction to his wife's brother, in her presence, that he should get the insurance money as soon as possible and pay it over to his wife. How could such a direction be reconciled with the idea that he still regarded himself as the owner of the policies, and, therefore, that the money should be paid to his executors, and a large part of it go to other persons than his wife. We are clearly of opinion that the question should have been submitted to the jury upon all the evidence, with instructions that they should find for the plaintiff if they found a delivery of the assignment or the policies. The assignments of error are sustained.

Judgment reversed and venire de novo awarded.