## Provident Trust Company, Appellant, *v.* Rothman et al.

Argued October 10, 1935. Before FRAZER, C. J., KEP-HART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Harvey A. Miller,* of *Miller & Nesbitt,* for appellant.

*Frank R. S. Kaplan,* with him *Samuel Markle,* for appellee.

OPINION BY MR. JUSTICE BARNES, March 23, 1936:

This appeal is from an order entered in the court below making absolute a rule to quash a writ of attach-

ment execution issued by the plaintiff, Provident Trust Company, which summoned the New York Life Insurance Company, as garnishee.

The garnishee, and the defendant named in the writ, Nettie Rothman, appeared *de bene esse,* and filed separately a petition to quash the writ, upon which a rule to show cause was granted. Answers were filed by plaintiff to the petitions of both defendant and garnishee. Following defendant's rule for a commission to take testimony, depositions were taken in New York City, and filed as part of the record. The original petitions were supplemented by amended petitions to which answers were duly made. The case was argued and decided below upon these petitions and answers, and the depositions thus taken.

On February 24, 1934, the plaintiff entered judgment upon a bond executed and delivered to it by the defendant, Nettie Rothman, and her husband, Israel Rothman. The bond was conditioned for the payment of the just sum of $45,000, and was secured by mortgage on real estate owned by obligors, situate in the Twelfth Ward of the City of Pittsburgh. At the time the attachment was issued, on April 18, 1935, the real debt was reduced to the sum of $36,500, upon which interest had been paid to March 31, 1935.

Israel Rothman died on December 31, 1934, leaving his wife as beneficiary of three policies of insurance upon his life, issued by the garnishee, New York Life Insurance Company. The dates and amounts of these policies were respectively, November 22, 1922, for $15,000; March 11, 1923, for $10,000, and June 15, 1926, for $10,000. They were substantially alike in form, and each contained a provision that "the insured, or in case the insured shall not have done so, the beneficiary after the insured's death, may, by written notice to the Company" make the proceeds of the insurance under the policies payable under one of five optional methods of settlement. One of these, designated option No. 3 in each

policy, provided for a life income settlement with annual payments "in equal installments for 20 years and for as many years thereafter as the beneficiary shall survive." The amount of each payment was set forth in tables contained in the policies. All three policies provided that the benefits or installments under the options should not be transferable nor subject to commutation or encumbrance during the lifetime of the payee.

The insured died without having exercised his optional rights of designating the manner of payment of the proceeds of his insurance. On January 8, 1935, the defendant beneficiary made due proof of his death, following which, on January 16, 1935, the insurance company delivered to her in settlement of the amounts due under the policies, three of its checks, totaling $30,272.13, and payable to her order. On February 1, 1935, the defendant returned to the company the checks, unused and unendorsed, accompanied by a written request that the latter issue to her in settlement of $30,000 of the insurance money, annuity certificates, referred to above as the third optional method of settlement contained in the policies. The insurance company accepted this instruction and cancelled the three checks by stamping them "Cancelled and Credited, February 7, 1935." At the same time it transferred $30,000 of the proceeds of the policies to its fund known as the "Consideration for Annuities Supplementary Account," remitting to defendant a check representing the balance of the proceeds of the three policies. It then issued to defendant as of January 8, 1935, the date upon which proof of loss had been received, two continuous installment annuity certificates, providing for monthly payments of $101.73 and $36.25, respectively. There were two annuity certificates issued, because of a variance between the rates of income payments fixed in the tables contained in the original insurance policies. Each certificate provided that should the death of the beneficiary, Nettie Rothman, occur before the expiration of the twenty years, the remainder of the twenty years'

payments with interest compounded at a designated rate, would be payable to her children and their survivors.

The annuity certificates set forth upon their face that they were issued in exchange for the original insurance policies which had become claims by the death of the insured. They also contained the following clause: "To the extent permitted by law, the benefits or any part thereof, payable hereunder, shall not be subject to commutation, anticipation, encumbrance, alienation or assignment, and no payments of interest or principal hereunder shall be subject to any debts, contracts or engagements, nor to any judicial process to levy upon or attach same for payment thereof."

The material question in the case is whether the proceeds of the insurance policies converted, as stated, into annuity payments, are exempt from attachment execution or other adverse process, in accordance with the terms of the annuity certificates. Such is the principal allegation of the petition to quash the writ. The answers of plaintiff aver, in substance, that the transaction was a purchase of an annuity by the defendant with her own funds; that the defendant obtained the annuity certificates with intent to transfer her assets in fraud of her creditors at a time when she was insolvent; that such funds are not exempt, but are in the possession of the garnishee, subject to the attachment.

The defendant and the garnishee rely upon the provisions of the Act of April 26, 1923, P. L. 104,[1] as giving

---

[1] This act provides as follows:

"Whenever under the terms of any annuity or policy of life insurance, or under any written agreement supplemental thereto, issued by any insurance company, domestic or foreign, lawfully doing business in this State, the proceeds are retained by such company at maturity or otherwise, no person entitled to any part of such proceeds, or any installment of interest due or to become due thereon, shall be permitted to commute, anticipate, encumber, alienate, or assign the same, or any part thereof, if such permission is expressly withheld by the terms of such policy or supplemental agreement; and if such policy or supplemental agreement so provides, no pay-

legal effect to the clause in the annuity certificates exempting the principal and income thereof from levy or attachment. The Act of 1923, amended the earlier Act of May 17, 1919, P. L. 208, in one respect only, viz., by extending its provisions to policies issued by foreign as well as domestic insurance companies.

It is asserted that the Act of 1923 defines the expression found in the annuity certificates reading "to the extent permitted by law." This act permits insurance companies to retain the proceeds of any annuity or life insurance policy for the benefit of a person under spendthrift trust provisions, where terms to such effect are contained in such annuity, policy of life insurance, or written agreement supplemental thereto. The proceeds of the three insurance policies in the instant case have been retained by the insurance company, excepting the relatively small amount in excess of $30,000. The fact that the garnishee here issued checks to the defendant for the proceeds of the policies is immaterial, for the reason that the checks were returned to the company for cancellation, unendorsed and unused, within a short time after their issuance. The beneficiary was entitled to have a period of grace after the insured's death within which to elect which one, if any, of the optional methods of settlement she desired to accept.

Was there a substantial compliance made with the conditions of the Act of 1923? In our view the annuity certificates are agreements supplemental to the original policies of life insurance within the meaning of this act. It is argued that a supplementary agreement is limited to one made by the parties who made the original contract of insurance, that is, insurer and insured; therefore, that the provision means that only the insured has

---

ments of interest or of principal shall be in any way subject to such person's debts, contracts or engagements, nor to any judicial processes to levy upon or attach the same for payment thereof; and, further, that such company shall not be required to segregate such funds, but may hold them as a part of its general corporate funds."

the right to create a spendthrift trust by supplementary agreement, if he failed to do so in the first instance, when the policy was issued to him. We do not so construe the act; we think it should be given a liberal and less technical construction in cases such as the present one. As showing the connection between the insurance policies and the annuity certificates, it should be noted that the defendant, Nettie Rothman, who is entitled to receive the income under the annuity certificates, is the identical person designated as beneficiary by the insured in his original contracts of insurance. The certificates on their face state that the policies of insurance (referring to them specifically by numbers) have become claims by the death of the insured, and have been surrendered to the company in exchange for the annuities. The amount of the monthly income payments guaranteed by the certificates is definitely fixed in the tables set forth at length in the original insurance policies. In other words, when the insured took out his policies, the contracts of insurance then issued to him fixed the amount which his beneficiary would receive after his death, if she selected the optional method of settlement calling for income payments. While it is undoubtedly true that defendant might have used the checks in payment to her of the policies in a lump sum, the fact remains that she elected instead to exercise the option which the original policies gave to her as beneficiary to make the supplemental agreement for the annuities. Clearly, the parties considered the annuity arrangement as supplemental to the policies, and the fund from which the monthly income installments are paid is shown by its name to be devoted to annuities supplementary to policies of insurance. While it may be that defendant, in declining payment in full of the policies, wished to place the proceeds beyond her creditors' reach, she did so in the exercise of an optional right given to her by the policies themselves, and granted to her by statute. For these reasons it seems to us the contention of plaintiff that the annuities

were separate and independent contracts which the defendant purchased with her own funds, is not sustained by the record.

That the insured did not direct in writing that the benefits under the policies be not "subject to encumbrance during the lifetime of the payee" does not deprive the beneficiary of the exemption. One of the policies reads: "The insured may direct in writing that the benefits under the above options shall not be transferable nor subject to commutation or encumbrance during the lifetime of the payee," while the two remaining policies provide: "If the insured shall so direct in writing, the installments payable under this option shall not be transferable nor subject to commutation nor encumbrance during the lifetime of the beneficiary."

This language in the policies respecting such action by the insured is directory merely, not mandatory, as its language clearly indicates. It gives to the insured the right to exempt such funds from transfer, commutation or encumbrance, but it does not prohibit the beneficiary from doing the same thing. Nowhere in the Act of 1923 is there language which limits such direction to the insured, and it is fair to assume that the beneficiary has the same power of direction. However that may be, we are convinced that the exemption claimed by the garnishee and defendant herein is amply covered by the words "no payment of interest or principal hereunder shall be subject to any debts, contracts or engagements, nor to any judicial process to levy upon or attach the same for payment thereof," appearing both in the annuity certificates, and in the Act of 1923, itself.

President Judge REID, in the opinion of the court below, stated that "We are of opinion that the absence of such written request or direction did not deprive the beneficiary of the protection of the exemption enactments. . . . Where the legislation provides for the protection of the widow and kindred of an insured, the law will be liberally construed so that the provision

made for the dependents may not be stricken down by the omission of some such really immaterial formality. . . . Moreover, the provision as to such direction is to be construed as being for the benefit of the insured and his family, and for the information of the insurer, and not for the protection of creditors."

We have given careful consideration to the acts called to our attention by plaintiff, dealing with life insurance, annuities, and rights of creditors with respect thereto,[2] particularly the Act of May 3, 1917, P. L. 112, and are of opinion that the case before us falls within, and is governed by, the provisions of the Act of April 26, 1923, P. L. 104. The evident intention of the legislature in enactment of the statutes exempting annuities and the proceeds of life insurance policies from judicial processes of levy or attachment, was to make secure such insurance funds for the benefit of the families of the insured. This settled policy of the law was recognized in *Irving Bank v. Alexander,* 280 Pa. 466, 471, where the present Chief Justice said: "The policy of the law, even where the rights of creditors may be adversely affected, favors the wife to whom her husband has attempted to secure the benefit of insurance upon his life: *Weil v. Marquis,* 256 Pa. 608; *Kulp v. March,* 181 Pa. 627."

The earliest legislation in Pennsylvania upon this subject is the Act of April 15, 1868, P. L. 103, which provides, in effect, that life insurance or annuities for the benefit of the wife or children or any dependent relative of insured, shall be free and clear from all claims of his creditors. In the leading case decided under this act, *McCutcheon's App.,* 99 Pa. 133, the policy of insurance,

---

[2] These acts referred to in appellant's brief are as follows: April 26, 1923, P. L. 104, section 1 (40 PS, section 514); Act of May 3, 1917, P. L. 112, section 1 (40 PS, section 515); Act of June 28, 1923, P. L. 884 (40 PS, 517), which supplies the Act of May 17, 1919, P. L. 207, section 1, which repealed the Act of May 5, 1915, P. L. 253, which supplied the Act of April 15, 1868, P. L. 103, section 1—the earliest act upon the subject-matter.

payable to the wife of the insured, was assigned to a creditor as collateral security for an indebtedness of the insured. , Upon the death of the insured, this court held that the wife was entitled to the proceeds of the policy not only because there was fraud in procuring the assignment, but by reason of the operation of the act. We said: "the very object and purpose of the act was, to enable insolvent persons to make provision in this way for their families or dependent relatives, which should be good and effective as against, and free and clear of, all claims of creditors."

The federal courts have been called upon to construe the Pennsylvania exemption statutes in cases where policies, or the proceeds thereof, were claimed by trustees in bankruptcy. In a recent case in the Circuit Court of Appeals for the Third Circuit, *Bowers et ux. v. Reinhard*, 78 Fed. (2d) 776, THOMPSON, Circuit Judge, reversing a decree of the district court, held that three annuity contracts made for the benefit of the wife of the insured were within the protection of the Pennsylvania Act of June 28, 1923, P. L. 884, exempting such contracts from the claims of the insured's creditors. See also the following cases arising under Pennsylvania statutes: *In re Booss*, 154 Fed. 494; *Smith v. Metropolitan Life Ins. Co.*, (C. C. A., 3d Circuit), 43 Fed. (2d) 74; *In re Rose*, 24 Fed. (2d) 253; *Dussoulas, Trustee, v. Lang*, 24 Fed. (2d) 254.[3]

The cases upon which plaintiff relies, viz.: *Fidelity Trust Co. v. Union Nat. Bank*, 313 Pa. 467; *Peoples*

---

[3] See opinion of Mr. Justice BRANDEIS, in *Legg v. St. John, Trustee*, 296 U. S. 489. There, an insurance exemption statute of the State of Tennessee was construed by the court, and while life insurance was "exempt from all claims of the creditors," monthly disability benefits were held to be for the benefit of insured himself, and not for his wife, children or dependents; therefore, disability benefits were not exempt. See also opinion of CLARK, District Judge, *In re Pinals*, 38 Fed. (2d), 117 (1930), at page 122, wherein he refers to cases in seventeen states where similar exemption statutes are in force.

*Savings Bank v. Scott,* 303 Pa. 294, and *American Trust Co. v. Kaufman,* 287 Pa. 461, are not in point for the reason that we are convinced there was not a fraudulent transfer of the assets of defendant by her action in returning the checks to the insurance company and electing to choose Option No. 3, calling for annuity payments. The policies, with their option settlement provisions, had been in force for a period of years before the obligation here was executed by defendant and her husband, and it may be noted that it was over two months after defendant exercised the settlement option that the attachment was levied. The averment in the answers of plaintiff that it was the intention of defendant to transfer her assets in fraud of creditors finds no support in the record.

It is urged that the matters alleged in the petitions of garnishee and defendant being dehors the record, this case should not have been disposed of in the court below upon a motion to quash the writ. While it is a well-established rule that the court will not quash a writ of attachment execution or foreign attachment unless some fundamental irregularity appears on the face of the record, yet it is a recognized exception to that rule that evidence dehors the record may be a ground for quashing a writ where defects therein are of such a character as to put plaintiff completely out of court. In *Pasquinelli v. Southern Macaroni Mfg. Co.,* 272 Pa. 468, the exceptional instances are stated where writs are quashed on matters dehors the record. The present case comes within one of the exceptions therein indicated, viz.: "that the property in question is, by statute, exempt from attachment." See also *Nicoll v. McCaffrey,* 1 Pa. Superior Ct. 187; *Dempsey v. Petersburg Sav. & Ins. Co.,* 26 Pa. Superior Ct. 633. The other questions argued in appellant's brief relating to service of the writ and jurisdiction of the court are not raised in the single assignment of error, nor in appellant's statement of the questions involved, and, therefore, will not be discussed. Moreover,

188

in the view of the case which we have taken, it is not necessary to consider these questions.

For the reasons stated, the order of the court below making absolute the rule to quash the attachment was proper. The assignment of error is overruled.

The order of the court below is affirmed.