## Resolute Insurance Co., Inc., Appellant, v. Pennington.

Argued October 3, 1966.

reargument refused December 27, 1966.

*Allen N. Brunwasser,* for appellant.

*Henry E. Rea, Jr.,* with him *Brandt, Riester, Brandt & Malone,* for appellees.

OPINION BY MR. JUSTICE EAGEN, November 15, 1966:

This appeal is from an order of the Court of Common Pleas of Allegheny County striking and setting aside a writ of execution and levy filed by the appellant, Resolute Insurance Company (Resolute), against Manhattan Life Insurance Company of New York (Manhattan), as garnishee, and the holder of certain insurance proceeds payable to Dolores Hewitt, one of the defendants in the proceedings below.

In June 1964, Western Allegheny Mining Company, Inc. (Western) and Mac Coal Company (Mac), enterprises controlled by George N. Pennington, required performance bonds to comply with the provisions of the Bituminous Coal Open Pit Conservation Mining Act, 52 P.S. §1396.4(g). Resolute posted the bonds and in return secured from Western, Mac, Pennington and his wife a written contract of indemnity designed to protect Resolute against loss. Dolores Hewitt, daughter of George N. Pennington, executed the contract as surety. The agreement contained, inter alia, the following provision: "That the company has become bound under the said bonds for the special benefit of the principal and the indemnitor and the special benefit and protection of the property of the principal and the indemnitor, their income and earnings. That the indemnitor is substantially and beneficially interested in obtaining the said suretyship. That the company looks

to and relies upon and shall at all times have the right to look to and rely upon, recover from, and follow the property which the principal and the indemnitor now have and which they hereafter may have and the income and earnings thereof for any sum or sums due or to become due the company under this agreement." Also, a provision that in the event of default on the contract, entry of judgment and execution, the indemnitors would claim "no benefit of exemption . . . under and by virtue of any exemption law now in force or which may be hereafter passed."

Resolute was later called upon to pay under the provisions of the bonds and sustained a loss, which they now seek to collect from the indemnitors. It confessed judgment against Mary H. Pennington and Dolores Hewitt on April 7, 1966, for the sum of $127,409.65 including $16,618 as attorney's commission for collection. The confession of judgment was pursuant to a warrant of attorney contained in the contract.

The record discloses that George N. Pennington died on February 9, 1966. At the time of his death, there was in force a policy of insurance on his life with Manhattan. Dolores Hewitt was the beneficiary. The insured, during his lifetime, had opted for an annuity type mode of settlement for the beneficiary, so that Manhattan holds a bulk sum in behalf of Dolores Hewitt payable to her in equal monthly installments.[1] It is this sum, $19,146.69, which Resolute levied against.

Dolores Hewitt filed a motion to strike and set aside the writ of execution and levy, pursuant to Pa. R. C. P. 3121(d). A rule to show cause issued. Reso-

---

[1] The certificate of settlement issued by Manhattan contained the following provision: "Creditors: To the extent permitted by law any payments hereunder shall not be subject to the claims of any creditor of any payee nor to execution or other legal process on behalf of any creditor of any payee."

lute filed preliminary objections in the nature of a demurrer and an answer on the merits, reserving the right to amend when and if testimony established other relevant facts not then of record. The issue came before the court below, which, after hearing arguments of counsel, entered an order striking and setting aside the writ and levy. Resolute appealed.

In Pennsylvania, funds such as here involved are not subject to the beneficiary's debts, contracts or engagements, or to any judicial processes of levy or attachment for the payment thereof.

The Act of June 28, 1923, P.L. 884 §1, 40 P.S. §517, provides: "The net amount payable under any policy of life insurance or under any annuity contract upon the life of any person, heretofore or hereafter made for the benefit of or assigned to the wife or children or dependent relative of such person, shall be exempt from all claims of the creditors of such person arising out of or based upon any obligation created after the passage of this act, whether or not the right to change the named beneficiary is reserved by or permitted to such person."

The Act of April 26, 1923, P.L. 104 §1, 40 P.S. §514, provides: "Whenever under the terms of any annuity or policy of life insurance, or under any written agreement supplemental thereto, issued by any insurance company, domestic or foreign, lawfully doing business in this State, the proceeds are retained by such company at maturity or otherwise, no person entitled to any part of such proceeds, or any instalment of interest due or to become due thereon, shall be permitted to commute, anticipate, encumber, alienate, or assign the same, or any part thereof, if such permission is expressly withheld by the terms of such policy or supplemental agreement; and if such policy or supplemental agreement so provides, no payments of interest or of principal shall be in any way subject

to such person's debts, contracts, or engagements, nor to any judicial processes to levy upon or attach the same for payment thereof; and, further, that such company shall not be required to segregate such funds, but may hold them as a part of its general corporate funds."

The Act of April 26, 1923, supra, has previously been construed by this Court and its impact enunciated. The leading case is *Provident Trust Company v. Rothman,* 321 Pa. 177, 183 A. 793 (1936). As stated therein, this statute was intended to protect the family of the insured, and their creditors may not attach proceeds due them under a life insurance contract, so long as such funds remain in the hands of the insurance company. See also, *Irving Bank v. Alexander,* 280 Pa. 466, 124 A. 634 (1924). This is so even if the proceeds are payable under an annuity plan, for which option the contract provides, and the proceeds of the policy are converted into an annuity certificate. And this rule applies with equal force whether the election to receive the proceeds through annuity payments is made by the insured during his lifetime, or by the beneficiary after the insured's death: *Provident Trust Company v. Rothman,* supra.

But, argues the appellant, Pennington, the insured, and Hewitt, the beneficiary, voluntarily waived all protection afforded by the legislation, before set forth, by specifically waiving in the indemnity contract the benefit of all exemptions provided by law. This, in our opinion, raises the crucial and dispositive question in this case, namely, whether the protection afforded by the Acts of 1923, supra, may be effectively waived by one whom the legislature intended to protect. We conclude not.

The rationale behind laws exempting insurance proceeds from the claims of creditors is to encourage individuals to provide for their families and dependents.

478

For some, an insurance policy is the best means of achieving a modicum of security; for others, it is the only means. To protect security so afforded, the legislature in clear language exempted such funds from invasion by creditors of the beneficiaries and from levy or attachment for the payment of their debts so long as the funds remain in the hands of the insurer. The legislation, undoubtedly, had in mind the common good and was based upon persuasive considerations of public policy. See, *Weil v. Marquis,* 256 Pa. 608, 101 A. 70 (1917), and *Kulp v. March,* 181 Pa. 627, 37 A. 913 (1897). To enforce a waiver, as here asserted, would completely circumvent the clear intent of the legislation and be contrary to the policy of the law long established in this Commonwealth.[2]

It is well settled in this Commonwealth that public policy forbids a working man from waiving the exemption from attachment provided by law as to his wages. See, *Marble v. Marble,* 379 Pa. 238, 109 A. 2d 145 (1954); *Steel v. McKerrihan,* 172 Pa. 280, 33 A. 570 (1896); and, *Firmstone v. Mack,* 49 Pa. 387, 88 Am. Dec. 507 (1865). The same considerations of public policy are no less compelling in the instant situation. Both exemptions were created to enable families and dependents to enjoy a certain amount of security. The language of Mr. Chief Justice BELL, speaking for the Court in *Syme v. Bankers N. Life Ins. Co.,* 400 Pa. 74, 79, 161 A. 2d 29 (1960), is particularly apt: "This

[2] The argument that parties have a right to make their own contracts is not apposite where a matter of sufficient public policy is at stake. Further, it is simplistic in the instant situation. Provisions waiving the protection of all exemption laws customarily appear as part and parcel of a printed form in notes, bonds, mortgages, and the like. It is unrealistic to say that the parties have bargained at arm's length in such cases, where the creditor enjoys an almost impregnable position. See, Graubart, Waiver of Debtors' Exemptions in Pennsylvania, 48 Dick. L. Rev. 130, 138 (1944).

Statute [40 P.S. §514] is to be construed as being primarily for the benefit and protection of the insured and his family, and secondly for the information and benefit of the insurer, and not for the protection of creditors. Cf. Provident Trust Co. v. Rothman, 321 Pa. 177, 185, 183 A. 793; Kenin's Trust Estate No. 1, 343 Pa. 549, 561 23 A. 2d 837."

Resolute further argues that the insurance funds are not exempt from attachment because of the clause in the contract of indemnity, hereinbefore set forth, giving it the right to "look to and rely upon, recover from" any property the indemnitors have at the time of the execution of the contract or may afterwards have. It is urged that this constituted an effective assignment of all of their assets, including the insurance policy, and that the issue is controlled by *Lemley v. McClure*, 122 Pa. Superior Ct. 225, 185 A. 878 (1936). We do not construe the contract provision to be an effective assignment; nor is *Lemley* controlling. It patently differs on its facts.

In *Lemley*, the policy of insurance was specifically assigned and pledged as security for a then existing debt. The policy was delivered to the creditor and written notice of the assignment given to and approved by the insurer. This is not the present case.

Finally, Resolute urges that the action of the lower court in setting aside the attachment on the basis of the pleadings only, which alleged facts dehors the record, was erroneous. An examination of the record compels the conclusion that sufficient facts were admitted in the proceedings below to justify the court's order. Furthermore, "while it is a well-established rule that the court will not quash a writ of attachment execution or foreign attachment unless some fundamental irregularity appears on the face of the record, yet it is a recognized exception to that rule that evidence dehors the record may be a ground for quash-

ing a writ where defects therein are of such a character as to put plaintiff completely out of court." *Provident Trust Co. v. Rothman,* supra, at 187.

We find no merit in any assignment of error asserted by the appellant.

Order affirmed.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

Every person may waive a Constitutional right; why, therefore, should a person not be permitted to waive a statutory right, if the waiver is made voluntarily, intelligently and for a consideration? Cf. *Commonwealth ex rel. Robinson v. Myers,* 420 Pa. 72, 76, 215 A. 2d 637.

In *Commonwealth ex rel. Robinson v. Myers,* the Court said (page 76) : "The right to such assistance, however, *as is the case with all constitutional rights, may,*\* under appropriate circumstances, *be waived."*

For these reasons, I dissent.

\* Italics, ours.