## Oral and Maxillofacial Surgery Associates of Chester County, Ltd. v. Kolimaga

C.P. of Chester County, No. 2012-12505-TT.

*Andrew D. Klein*, for plaintiff.
*Joseph P. Green*, for defendants.

TUNNELL, *J.*, November 25, 2013—

ORDER

And now, this 25th day of November, 2013, following a hearing, the petition of plaintiff for a preliminary injunction is granted. Defendants are enjoined from using or transferring any funds maintained in any and all accounts in which either or both of them claim an interest, including but not limited to accounts at Citadel FCU, Northern Trust Co., and Scottrade, but excluding from this order the proceeds of the decedent's 401(k) account, in accordance with the parties' stipulation filed November 21, 2013, until further order of the court;

The bond previously posted by plaintiff in the amount of $50,000 shall continue;

And, the motion of Joseph Kolimaga for partial summary judgment and supplemental motion to modify

special injunction is denied for reasons set forth below.[1]

1. For a preliminary injunction, the plaintiff must establish:
1) relief is necessary to prevent immediate and irreparable harm;
2) a greater injury will occur from refusing the injunction than from granting it;
3) the injunction will restore the parties to the status quo;
4) the alleged wrong is manifest and the injunction is reasonably suited to abate it;
5) the plaintiff's right to relief is clear; and
6) granting the request will not adversely affect the public interest.
*Kessler v. Broder*, 851 A.2d 944, 947 (Pa. Super. 2004).

The court determines that plaintiff has done so in this case. The court uses as its guide the Superior Court's decision in *Ambrogi v. Reber*, 932 A.2d 969 (2007). Plaintiff has demonstrated that there are substantial legal questions that the court must resolve to determine the rights of the parties.

At the time the case was initiated, the defendants had sold or were in the process of selling two residential properties and, plaintiff feared, liquidating these and perhaps other assets to render themselves execution-proof from any civil liability to plaintiff. A special injunction was entered to preserve the status quo.

The court took care to balance the rights of both parties, issuing orders granting defendant Joseph Kolimaga access to some of the funds in question, and otherwise modifying its orders when requests were made by him.

Most recently Joseph Kolimaga filed a motion for partial summary judgment and supplemental motion to modify special injunction on August 9, 2013. Kolimaga asserted that plaintiff's claims were barred to the extent they arose prior to the running of the four-year statute of limitations, to wit, prior to November 28, 2008, because plaintiff could have discovered his wife's alleged defalcations had plaintiff used reasonable diligence. Kolimaga also urged that two of the assets were exempt from execution by creditors, namely the proceeds of a $100,000 insurance policy on the life of his late wife, Joan Kolimaga, and his interest as the beneficiary of her 401(k) plan. He wanted these released to him free of the special injunction in place. This the court scheduled for a hearing, together with the hearing on plaintiff's request for a preliminary injunction. Testimony was taken on November 14, 2013 and November 21, 2013.

Plaintiff called a forensic accountant, Ricardo J. Zayas, CPA, to explain the results of his investigation into the discrepancies in the books and records of Oral and Maxillofacial Surgery Associates of Chester County, Ltd. (hereafter "OMFSA"). Aided by more than 30 exhibits and reams of bank and credit card statements, Mr. Zayas demonstrated that $1,328,324.28 of plaintiff's funds had been misappropriated since January 2004. Most if not all of it was diverted into a number of different accounts held by Joan Kolimaga or jointly by Joan and Joseph Kolimaga. While not necessarily free of all doubt, the court was satisfied that the

plaintiff's right to relief is clear.

The plaintiff did not show that Joseph Kolimaga was a knowing and active participant in his wife's fraud but, in accord with plaintiff's claim of unjust enrichment, did show that Joseph Kolimaga at least passively received and benefitted from her extravagant expenditures. Houses were purchased and remodeled. Cars were bought. A huge swimming pool, outdoor fireplace, pond and bridge were installed in the backyard. They took cruises and enjoyed swank vacations. They seemed to have no difficulty writing checks for $40,000 a pop, which approximated Joan's annual salary; Joe could not find a full-time job for some of this period.

It appeared to the court that plaintiff could prevail on its theory of unjust enrichment against Joseph Kolimaga, and possibly on other counts as well.

Turning to his petition, the court believed that Mr. Kolimaga could prevail on his argument that plaintiff was not entitled to invoke the "discovery rule" so as to toll the running of the statute of limitations. If the statute of limitations applies, plaintiff's claims are reduced from $1,328,324.28 to $551,660.90. The latter is the maximum sum subject to recovery since November 28, 2008.

The plaintiff's own forensic accountant conceded that Joan Kolimaga's misconduct could have been detected within a month simply by having another individual do the bank account reconciliation. As it was, the plaintiff did not have the simplest control in place to protect itself. The "discovery rule" operates to balance the rights of diligent, injured plaintiffs against the interests of defendants in being free from state claims. *Wilson v. El-Daief*, 600 Pa. 161, 964 A.2d 354, 366 n. 12 (2009). The question is not what did the plaintiff know of the injury done to him. The question is what might the plaintiff have known by use of the means of information within his reach, with the vigilance the law requires of him. *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850, 858 (2005). The court anticipates that plaintiff will have a hard time at the final hearing should it argue that it used reasonable diligence in not ascertaining its claims between 2004-2008. However, because there are material facts in dispute, the defendants' motion for partial summary judgment must be denied.

As to the two assets that Joseph Kolimaga views as exempt from attachment by creditors, the parties were able to enter into a stipulation in respect to one of these, his interest in his wife's 401(k) plan. They agreed that this was not subject to attachment, execution or restraint in this case. The court approved the stipulation during the hearing. During his summation to the court, plaintiff's counsel argued that the protections in this agreement were limited to the time prior to any distribution of the funds into the hands of the beneficiary. Resolution of that issue will await the final hearing.

The other asset claimed to be exempt is the proceeds of a $100,000 policy of insurance on the life of Joan Kolimaga payable to Joseph Kolimaga. Defendant relied on the Pennsylvania exemption statute at 42 Pa. C.S.A. §8124(c) which provides as follows:

(c) Insurance proceeds. — The following property or other rights of the judgment debtor shall be exempt from attachment or execution on a judgment:
\* \* \*

(6) The net amount payable under any annuity contract or policy of life insurance made for the benefit of or assigned to the spouse, children or dependent relative of the insured, whether or not the right to change the named beneficiary is reserved by or permitted to the insured. The preceding sentence shall not be applicable to the extent the judgment debtor is such spouse, child or other relative.

This legislation is not a model of clarity. What does "The preceding sentence shall not be applicable to the extent the judgment debtor is such spouse, child or other relative" mean?

It may be made clearer by recalling that at one time in Pennsylvania insurance proceeds were exempt from the claims of creditors in order to effectuate public policy encouraging "the working man" to provide for his wife and children with an assured fund for their maintenance clear of the claims of creditors. Case law extended this protection to creditors of the spouse-beneficiary. *See, Consumers Time Credit, Inc. v. Remark Corp.*, 248 F. Supp. 158 (E.D. Pa. 1965) concerning 40 P.S. §517, the predecessor statute. The court observed:

We think it would be destructive of the benevolent policy of this statute to permit the creditor of the insured or of the beneficiary or of both, to reach the policies or their cash value.

*Id.* at 161.

The federal court's decision was followed the next year by the Supreme Court of Pennsylvania in *Resolute Ins. Co. v. Pennington*, 423 Pa. 472, 224 A.2d 757 (1966) (life insurance proceeds not subject to attachment for spouse beneficiary's own debts).

Section 517 was amended and restated and is now 42 Pa. C.S.A. §8124(c)(6). Clearly, with the last sentence in that subsection, the legislature meant to alter the rulings in *Consumers Time Credit* and *Resolute Insurance* by providing that in the instance where the beneficiary spouse is a co-judgment debtor, he or she does not enjoy the protection of an exemption. Judgments have yet to be rendered in this case.

But, should Joseph Kolimaga become a judgment debtor after the final injunction hearing, 42 Pa. C.S.A. §8124(c)(6) will not assist him.