Stutzman, Admr., Appellant, *v.* Fidelity Mutual
Life Insurance Company et al.

Argued March 27, 1934.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Friedjoff D. Tappert,* with him *Tillman K. Saylor,* for
appellant.

*Russell R. Yost,* of *Graham, Yost & Meyers,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, April 30, 1934:

This is a contest over the proceeds of a life insurance policy on the life of Albert S. Howard between Jacob A. Stutzman, his administrator, and Bertha J. Howard, his widow. The bill filed by the administrator was dismissed and he has appealed.

The policy as originally issued named his executor or administrator as beneficiary, with the right to change the beneficiary. Sometime before his death the insured changed the beneficiary and named his wife. It is contended that this was in fraud of his creditors, as he was insolvent at the time.

The administrator points to our very recent decision in Fidelity Trust Co. v. Union Nat. Bank of Pittsburgh, 313 Pa. 467, and such earlier cases as Appeal of Elliott's Executors, 50 Pa. 75; McKown's Est. (No. 1), 198 Pa. 96, and Huff's Est., 299 Pa. 200; and from them contends that the proceeds should be awarded to him for the benefit of the creditors of the deceased. There is one circumstance which distinguishes sharply this situation from that presented in any of the cited cases.

The deceased was heavily involved financially and was carrying insurance on his life to an amount in excess of $100,000. One of the policies for $25,000 was in the Fidelity Mutual Life Insurance Company. Other policies aggregating $20,000 were in the Equitable Life Assurance Society of the United States. The Fidelity policy named his estate as beneficiary; the Equitable ones designated his wife. One of his creditors was Frank J. Mardis. The indebtedness due him was about $20,000. He was the agent of the Equitable Company in Johnstown where the insured lived. Under threat of criminal proceedings, Mardis procured from Howard an assignment of these policies to himself, the wife joining in the assignment. The policies at the time had a cash sur-

render value of $700. To restore to his wife the protection she had lost, the husband, immediately after her assignment of the Equitable policies, changed the beneficiary in the $25,000 Fidelity policy from his estate to her. This policy had a cash surrender value at the time of only $50, and, because of his borrowings from the company, there was due upon it, not the full sum named, but $22,475.63. The chancellor found that the purpose of the deceased in changing the beneficiary was not to defraud his creditors (the other policies actually went to one of them and the assignee's right to receive their proceeds is not challenged) but was to substitute the Fidelity policy for the ones which his wife in his relief had given up, and to restore her to the position she had held. When account is taken of the fact that the policies which the wife surrendered had a cash value which was greatly in excess of the one she received and which would have paid the premiums for several years without further cash payment, and that the policy she obtained had no substantial cash value, and that the public policy of the State as evidenced by the Act of June 28, 1923, P. L. 884, 40 PS § 517, and the legislation which preceded it, is to favor wives and children as against creditors of insured husbands and fathers, we are of opinion that the substitution of the policy here in question for the wife's benefit in lieu of those which she assigned cannot be declared a fraud on creditors when all the attending circumstances of the transaction are taken into account.

The decree is affirmed; costs to be paid out of the proceeds of the policy.