Kenin's Trust Estate (No. 1).

Argued November 28, 1941. Before Maxey, Drew, Linn, Stern, Patterson and Parker, JJ.

*R. M. Remick*, with him *Aaron W. White, Maurice J. Klein, Loewenstein & Winokur* and *Saul, Ewing, Remick & Harrison*, for appellants.

*Charles J. Biddle*, with him *Leslie Swope* and *Drinker, Biddle & Reath,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 5, 1942:

This is an appeal from the final decree of the Orphans' Court of Philadelphia County confirming, with some modifications, the auditor's report on the account of the Pennsylvania Company for Insurances on Lives and Granting Annuities, (hereinafter referred to as the trustee) Trustee under the deed of Nucom Kenin, dated April 12, 1929. Kenin died insolvent on June 1, 1929, leaving a last will, with codicil, both dated April 12, 1929. By his will he appointed Rose Kenin, (his daughter) Otto F. Pfizenmaier and The Pennsylvania Company for Insurances on Lives and Granting Annuities executors and trustees also of his estate. Kenin's widow died on February 6, 1930.

By deed of trust dated April 12, 1929, Kenin assigned to trustee certain policies of insurance on his life, totalling in their face amounts $100,000, "in trust to collect the proceeds of the said policies upon maturity and pay over the same unto the Trustees named in the last Will and Testament of the Settlor to be thereafter held by them under the same uses and trusts and with like distribution as in said Will set forth with reference to the residuary estate of the Settlor". By his will of the same date Kenin bequeathed his residuary estate in trust for the benefit of his wife and his descendents (with a gift to charity if there was an ultimate failure of issue).

The first two questions arising from this record are the following:

(1) Should the proceeds of these insurance policies be paid to the executors of the estate of the deceased settlor on the ground that the deed of trust is testamentary in character?

(2) Is the case ruled by the provisions of the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045 (40 P. S. 517)? The court below answered both of these questions in the affirmative.

Four of the insurance policies, aggregating $60,000 had previously been held under a prior deed of trust, dated November 6, 1926, whereunder the Union National Bank was Trustee.

The account giving rise to the present proceedings was filed on January 30, 1935, and after it was called for audit Arthur Littleton, Esq., was appointed Auditor by a decree entered December 21, 1936. Meetings were held before the Auditor from January 7, 1937, to July 12, 1940. The Auditor's report was filed on April 21, 1941.

On April 18, 1941, exceptions to the Auditor's report were filed on behalf of The Pennsylvania Company for Insurances on Lives and Granting Annuities as Trustee under Deed of Nucom Kenin dated April 12th, 1929, and as one of the Trustees under the Will of Nucom Kenin dated April 12th, 1929, Rose Kenin, individually and as one of the Trustees under the said Will, Fanny Hart, Samuel K. Hart, Irwin Morton Hart and Anita Hart, beneficiaries; also on behalf of The Pennsylvania Company for Insurances on Lives and Granting Annuities individually as a bank.

On April 19, 1941, exceptions to the report were filed on behalf of the Corn Exchange National Bank and Trust Company.

By three certain supplemental reports filed with the entire record by the Auditor on April 23, 1941, exceptions 31, 32 and 33 of the Corn Exchange National Bank and Trust Company were sustained and all other exceptions by all exceptants were dismissed.

These exceptions were duly argued before the court en banc and in an opinion filed June 13, 1941, exceptions 38, 39, 40 and part of 43 of the Corn Exchange National Bank and Trust Company of Philadelphia were sustained and all others were dismissed.

From that decision and the final decree thereon the present appeals were taken, that of the Trustee under the deed on June 24, 1941, to January Term, 1941, No. 252; that of the Pennsylvania Company for Insurances

on Lives and Granting Annuities as a bank on the same date to January Term, 1941, No. 253, security in both appeals being duly fixed and entered; those of The Pennsylvania Company for Insurances on Lives and Granting Annuities and others, trustes under the will and of individual persons interested under the terms of the will on July 3, 1941, to January Term, 1941, Nos. 262-6; that of the Corn Exchange National Bank and Trust Company on August 13, 1941, to January Term, 1941, No. 289.

The conclusion of the Auditor, which was sustained by the court below, was that the disposition which Nucom Kenin made of the proceds of his policies of life insurance was a testamentary disposition, and that such proceeds were assets of his estate which should have been paid over to the executors of his will and become subject to the claims of his creditors.

The Auditor in his able and painstaking report says: "The deed of trust of the insurance policies was revocable; and settlor retained the power to amend the deed in whole or in part, or in any or all of its terms and conditions. It further provided that if the right of revocation or amendment thus reserved was exercised by settlor at any time, any of the policies then forming a part of the trust and designated by settlor shall be released from the terms of the deed and shall be assigned to the settlor or his nominee absolutely for such uses and purposes as the settlor might designate. The settlor also provided that any and all payments, dividends, surrender values, disability payments and benefits of any kind which may accrue on account thereof during the lifetime of the settlor shall be payable to him direct, and the settlor shall have the right at any time to use any of the said policies for the purpose of borrowing from the respective insurance companies any sums which he may desire. The Act of June 28, 1923, P. L. 884, provides: 'that the net amount payable under any policy of life insurance . . . upon the life of any person heretofore or hereafter made for the benefit of or assigned to the

wife or children or dependent relative of such person shall be exempt from all claims of the creditors of such person arising out of or based upon any obligation created after the passage of this Act, whether or not the right to change the named beneficiary is reserved by or permitted to such person.' The first inquiry is whether or not that which Nucom Kenin did on April 12, 1929, brings these policies within the provisions of the Act of 1923. That Act exempts from claims of creditors of the assured proceeds of policies 'made for the benefit of or assigned to the wife or children or dependent relative' of the assured. The policies, immediately prior to the creation of the deed of trust, were for the benefit of the Executors and Administrators of Nucom Kenin. It is true that four of the policies had previously in 1926 been placed in the insurance trust with the Union National Bank as Trustee, and the beneficiary therein had been changed from 'executors or administrators' to 'Union National Bank, Trustee'. But this deed of trust was revoked by the settlor on April 3, 1929, prior to the execution and delivery of the deed presently under discussion. Upon the revocation of the earlier deed, the Union National Bank, Trustee, ceased to have any right or interest in the four policies; and had Nucom Kenin died in the interval between the revocation of the earlier deed and the creation of the present one, the proceeds of the policies would have been payable to 'his executors or administrators'. The fifth insurance policy, namely, that of the Penn Mutual in the amount of $40,000, had been the subject matter of many changes and assignments. Prior to April 12, 1929, it had never, however, been the subject matter of a deed of trust. The last assignee of the policy prior to that date was the Land Title and Trust Company in Philadelphia; and that Company (The Real Estate-Land Title and Trust Company) on April 3, 1929, assigned the policy 'unto the insured's Executors, Administrators or Assigns.' So that had Nucom Kenin died between April 8, 1929, and April

12th, the proceeds of such policy would have been payable to his Executors or Administrators. On April 12, 1929, therefore, as has hereinbefore been found, the beneficiaries of each of the five policies were the Executors or Administrators or Assigns of the assured. On that day he executed and delivered a deed of trust to the Pennsylvania Company as Trustee, listing the five policies and directing the Trustee to hold the policies and, on maturity, to collect the proceeds and to pay the proceeds over to the Trustees named in the settlor's will to be held by them under the same uses and purposes as set forth in the settlor's will. Did that act constitute an assignment of the policies 'to the wife or children or dependent relative' of Nucom Kenin? In the opinion of the Auditor, it did not."

The reasoning of the Auditor is sound and the conclusion he came to must be accepted. All wills are ambulatory and become effective only when the will's maker dies. Between the date of the will and the maker's death, fifty days later, it was within the power of Kenin to change the beneficiaries of the insurance policies by changing his will. It was also possible for him to revoke or physically destroy that will, without making another, and so die intestate. In the latter event, the trustee could have collected the proceeds of the policies only for the Administrator of Kenin's estate. It follows that what Kenin did on April 12, 1929, in respect to his insurance policies did not bring "the net amounts payable under those policies within the exemption against the claims of creditors and in favor of the wife or children or dependent relative of" the insured provided for in the Act of June 28, 1923, P. L. 884. The Auditor pertinently points out that "the only duty which the Trustee named in the deed of April 12th had was to collect the proceeds of the insurance policies and pay them over "to the Trustees named in the last will and testament of the settlor". The administration of the fund thereafter was to be by the testamentary Trustees — unascertainable until his death—and not by the Trustee named in the deed.

The Auditor correctly held that the principles enunciated by this court in *Myers' Estate,* 309 Pa. 581, 164 A. 611, are determinative of the first question raised in this case. In that case the question was whether the state could collect an inheritance tax on the proceeds of certain life insurance policies in the face of the exemption provided for in the Act of March 28, 1929, P. L. 118, amending the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, and which provides as follows: "The proceeds of policies of life insurance payable otherwise than to the estate of the insured, and whether paid directly by the insured to beneficiaries designated in the policies or to a trustee designated therein and held, managed and distributed by such trustee to or for the benefit of such persons or classes of persons under such plan and in such estates as may have been prescribed by the insured under agreement with such trustee shall not be included in imposing any tax under this section" (i. e., subsection (d)). The facts in that case were that Max Myers, the insured, executed on September 16, 1930, a trust agreement whose subject was six insurance policies on his life, totaling $22,021.21. He made his will on the same day, and died six days later. The deed of trust on the policies named no beneficiaries of the trust but provided that the principal should be distributed in accordance with the terms of the settlor's will, and reserved to the settlor the right to revoke or alter the trust, to withdraw property from it and add to it, and to receive all dividends and other cash distributions on account of the policies named in the trust. This court, in an opinion by the present Chief Justice, said: "The settlor retained complete title and control. No other interest than his, vested or contingent, arose until his death. . . . The deed named no beneficiaries. . . ."

The appellant trustee contends that the Myers case is distinguishable factually from the instant case in that it involved only the right to levy a transfer inheritance tax. This factual distinction between the two cases does

not make the principles laid down in the Myers case inapplicable here. In both the Act of 1923 (supra) and the Act of 1929 (supra) for the purpose is to exempt the proceeds of life insurance policies made for the benefit of certain designated persons and not payable to the estate of the insured from (in the one case) "all claims of the creditors of such person" and from (in the other case) the Transfer Inheritance Tax of June 20, 1919, P. L. 521. This court's decision in the Myers case is that "the designation of the actual beneficiaries who are to receive the proceeds of the policies *must be made in the lifetime of the insured and in the trust instrument* in order to bring the transaction within the terms of the Act of 1929. . . . *Only where the trust instrument is complete in itself* by naming the beneficiaries of the proceeds of the policies is the fund realized from the policies free of tax" (italics suplied). The Myers case holds that when a settlor of a trust shows by the trust agreement that he intends to control *by his will* the disposition of the proceeds of his life insurance policies, those proceeds must be treated for transfer tax purposes as though they were made payable to his estate. No insured person can exercise *post-mortem control* over the proceeds of his life insurance policies and still keep those proceeds within the exemption provided for in the above cited Transfer Inheritance Tax Act of 1929. The same reasoning leads to the decision that no insured person can exercise *post-mortem control* over the proceeds of his life insurance policies and still keep those proceeds within the exemption provided for in the above cited insurance proceeds exemption Act of 1923. In neither case can the statutory exemption and testamentary control of the thing exempted coexist.

Our conclusion that the deed of trust is testamentary in character is in harmony with the Restatement of the Law of Trusts. Section 56 of the Restatement declares: "Where the owner of property purports to create a trust inter vivos but no interest passes to the beneficiary be-

fore the death of the settlor, the intended trust is a testamentary trust and is invalid unless the requirements of the statutes relating to the validity of wills are complied with." Under comment (e) is the following: "If the owner of property transfers it to another person in trust for such person as the transferor may designate by an act which is testamentary, the intended trust is testamentary . . .". Comment (c) to Section 26 of the Restatement of the Law of Trusts, p. 81, reads as follows: ". . . If the owner of property transfers it to another in trust for such person as he may designate thereafter, no trust arises unless and until he designates the beneficiary". In the instant case the "owner of property" did not designate the beneficiaries of his insurance policies trust until his will spoke at the instant of his death and it was then too late to exclude his creditors from making successful claims against these assets.

Appellant cites cases in support of the proposition that where there are two or more instruments creating or relative to a trust they should be construed together to effectuate the intention of the Settlor and this is true even though one of these instruments is a will. This proposition has often received judicial recognition when no rights of creditors were affected by such recognition. In the instant case Kenin had the right to direct by will how the proceeds of his insurance policies held in trust should be distributed provided that before his will became effective by his death no rights of creditors attached to his property right in those insurance policies.[1]

---

[1] This court held in *Appeal of Elliot's Executors*, 50 Pa. 75, that assignments of life insurance policies by an insolvent insured, to a trustee for the insured's wife "would have been good against heirs, devisees or legatees" but were not good against creditors. We said: "These policies were securities for money, valuable choses in action which could be sold at public and private sale and are included in the general words personal estate or property, and would pass under that head by deed or will . . .". The opinion pointed out that "in England in the later cases it is held that unless the property conveyed can be reached by execution, the conveyance is not fraudulent because it does not delay or hinder creditors". We disagreed with this later English

If it were not for the claims of Kenin's creditors, he could have by will distributed the proceeds of his insurance policies in any manner he saw fit to do so, just as he could have in the same solvent situation disposed of all the rest of his property, subject, of course, to his widow's rights under the intestate laws of the Commonwealth. "In Pennsylvania, under the mixed jurisdiction of our courts, it is settled that the executor or administrator of an insolvent estate may set aside a fraudulent conveyance, as he is in such a case a trustee for creditors": *Appeal of Elliott's Executors* (supra).

The creditor appellee, the Corn Exchange National Bank and Trust Company of Philadelphia, contends also that when the deed of trust was executed without consideration on April 12, 1929, the policies which had previously been payable to the estate of Nucom Kenin were delivered to and transferred unto the name of the trustee under the deed of trust, and that Kenin was then insolvent and therefore this conveyance was a conveyance in fraud of his creditors and voidable as to them, under the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045 (39 PS §354). Appellee argues that the facts of this case bring it within the ruling of this court in *Fidelity Trust Co. v. Union National Bank of Pittsburgh*, 313 Pa. 467, 169 A. 209. The decision in that case must be interpreted in the light of the facts of that case.

---

ruling and declared it "contrary to the earlier cases as held by Chancellor Kent (1 Story's Com. 368)". The *Appeal of Elliott's Executors* (1865) long antedated the insurance policy exemption Act of June 28, 1923, and is cited only to show that under certain circumstances the rights of creditors in the proceeds of insurance policies were early recognized as being superior to the claims of wives or children. This court in *Elliott's Executors* distinctly declared, however, that that case was "not meant to extend to policies effected without fraud directly and on their face for the benefit of the wife, and payable to her; such policies are not fraudulent as to creditors, and are not touched by this decision". The Act of 1923 as to the proceeds of policies of life insurance "made for the benefit of or assigned to the wife or children or dependent relative of such [insured] person" is in harmony with the last-quoted excerpt from *Elliott's Executors*.

It has been said and often reiterated that "in every case what is actually decided is the law applicable to the particular facts; all other legal conclusions therein are but obiter dicta": *Cohen v. Virginia,* 6 Wheaton 264, 399; *Welsch v. Pittsburgh Terminal Coal Corporation,* 303 Pa. 405, 408, 154 A. 716. In the Fidelity Trust Co. case (supra) this court held that "it appears clearly that the conveyances [of insurance policies] were made [by an insolvent] with actual intent, as distinguished from an intent presumed in law to hinder, delay or defraud creditors". This court also found that the insured maintained his credit "by concealment and false pretences, made with knowledge that they were false. Such false pretences support the inference of actual intent" to defraud. We also found that when the insured changed the beneficiaries in the policies in question totaling $255,-456.19 from his estate to his trustee for the benefit of his wife and three children, he "could not, with reason, have considered that he had not provided adequate insurance for his wife and children, because they were then, under the trust agreement, the beneficiaries of insurance greatly in excess of $500,000 and his own affairs were in very precarious condition. In addition his wife was the beneficiary of a $500,000 policy under the trust agreement".

This court has not held that *in every case* where an insolvent insured provides by a trust agreement or otherwise for the payment of the proceeds of his policies to his wife and children, such a provision is unlawful and a fraud upon the insured's creditors. We said in negativing the contention of fraud in *Potter Title and Trust Company, Admr., v. Fidelity Trust Company, Trustee, et al.,* 316 Pa. 316, 317, 175 A. 400: "The wife and children of every man have an insurable interest in his life, and the law has always looked with favor on life insurance contracts made for their comfort and maintenance. From our earliest cases down to the present day this court has upheld and encouraged such provi-

sions and protected them from claims of creditors: *Stutzman, Admr., v. Fidelity Ins. Co.*, 315 Pa. 47, 49. In addition, the legislature has enacted laws for the protection of the wife and children, as beneficiaries of life insurance policies, from claims of creditors of the insured (Acts of April 15, 1868, P. L. 103, and June 28, 1923, P. L. 884), and this benefit inures to them whether the insured was solvent or insolvent, or had reserved the right to change the beneficiary: *Schaeffer's Est.*, 194 Pa. 420; *Irving Bank v. Alexander*, 280 Pa. 466." In *Provident Trust Company v. Rothman et al.*, 321 Pa. 177, 185, 183 A. 793, this court said, quoting from an earlier case: "The policy of the law, even where the rights of creditors may be adversely affected, favors the wife to whom her husband has attempted to secure the benefit of insurance upon his life: *Weil v. Marquis*, 256 Pa. 608 [101 A. 70]; *Kulp v. March*, 181 Pa. 627 [37 A. 913]." In *Newman v. Newman et al.*, 328 Pa. 552, 196 A. 30, this court in an opinion by Mr. Justice LINN declared in effect that in the absence of bad faith, it is not a fraudulent conveyance for an assured to restore his wife as beneficiary of a life insurance policy after she had consented to a change of beneficiary in order to permit her husband to use the policy as collateral for a loan subsequently repaid. See also *Stutzman, Admr., v. Fidelity Mutual Life Insurance Company et al.*, 315 Pa. 47, 172 A. 302, in which this court in an opinion by the present Chief Justice declared that "the public policy of the state as evidenced by the Act of June 28, 1923, P. L. 884, 40 PS §517, and the legislation which preceded it, is to favor wives and children as against creditors of insured husbands and fathers".[2]

---

[2] As to the construction of the Uniform Fraudulent Conveyance Act in other jurisdictions, in respect to the transfer of life insurance policies, by an insolvent insured, from his estate to his children, without consideration, so far as that transfer affects creditors, see *Equitable Life Assurance Society v. Hitchcock* (1935), 270 Mich. 72, 258 N. W. 214, 106 A. L. R. 591, and *First Wisconsin National Bank v.*

In view of our decision that the trust deed in question was testamentary in character it is not necessary to decide whether the facts on this record bring this case within the ruling of the *first* of the five insurance policy cases last cited and quoted from or within the rulings in the *other* and later cases. Since the trust deed was testamentary in character the proceeds of the five listed insurance policies should have been paid to the executors and trustee under the will of Nucom Kenin, to be administered primarily for the benefit of his creditors.

The decree of the court below, embodying the recommendation of the Auditor, "that The Pennsylvania Company, as Trustee under the deed, be ordered and directed to replace in the principal of the account presently before the Court, the sum of $97,231.15 in cash in substitution for the assets presently constituting the balance of principal shown therein; and that such balance be then awarded to Rose Kenin, Otto F. Pfizenmaier and The Pennsylvania Company for Insurances on Lives and Granting Annuities as Executors of the will of Nucom Kenin, deceased," is correct.

The only other questions requiring discussion relate to "interest and costs". When the Pennsylvania Company as trustee[3] under Kenin's deed of trust received the proceeds of the insurance policies amounting to $97,231.15 its duty under the deed was as set forth in the second paragraph of this opinion. Instead of doing its duty as prescribed in the deed of trust, the trustee invested these proceeds and distributed the income of the investment to the residuary beneficiaries under the will. Prudence required that it file its account as trustee un-

---

*Roehling* (1937), 224 Wis. 316, 269 N. W. 677 (p. 131 of 1940 Supplement to Vol. 9 of Uniform Laws Annotated).

See also article on "The Fraudulent Transfer of Life Insurance Policies", in Vol. 88, No. 7, p. 771, of the University of Pennsylvania Law Review (May 1940).

[3] It may be noted that among the three Executors and Trustees in Kenin's *will* is the Pennsylvania Company for Insurances on Lives and Granting Annuities and that this company is the *sole* trustee under the *deed of trust*.

der the deed of trust and ask the court to award the fund. It was nearly six years before it filed an account. The Auditor concluded that "interest on the fund at the legal rate of 6% from the date the trustee breached the provision of the trust by investing a part of the fund, to wit, August 3, 1929 . . . down to the date of the filing of the Trustee's account, to wit, January 30, 1935, should be added to the principal fund to be paid over" by this Trustee. The Auditor later refused to accept the view of the exceptant to his report that the Trustee pay interest after the date of filing its report as well as for the period preceding the report's filing. The court in banc, after considering exceptions to the Auditor's report held that the Auditor properly ruled that all investments should be replaced with cash and then said: "We agree with the exceptant creditor that interest should be charged for the improper withholding of this fund. Equitably we feel that the accountant should have a reasonable time within which to prepare its account, file the same, and have it audited. One year, in our opinion, would have afforded ample opportunity for this purpose. We therefore direct that interest at the rate of 6% shall be charged upon the amount which the accountant collected, beginning one year from such period until actual payment of the award. There would seem to be no legal justification for the trustee to deviate from the clear terms of the trust, and it must therefore pay interest as damages for detention: 33 C. J. 178; *McCornack v. Sharpless*, 254 Pa. 541; *Potter's Est.*, 249 Pa. 158; *Ihmsen's Appeal*, 43 Pa. 431, and *Kline's Est.*, 280 Pa. 41."

There is no statutory[4] requirement that damages for the detention of funds be measured by the legal rate of

---

[4] The Act of May 28, 1858, P. L. 622, sec. 1 (41 PS §3), fixing at 6% the lawful rate of interest for the loan or use of money, in all cases where no express contract shall have been made for a less rate does not rule the question of "damages for detention". The word "use" when referring to money is often employed as a synonym for "loan". Money is not "used" within the meaning of this act when it is detained under the circumstances here present.

interest for the period of the detention. That such damages have often been thus measured was due to the fact that under the normal investment conditions prevailing (except for brief intervals) during the period ante-dating 1929, a just charge for detention was 6% per annum. This was apparently the situation in the cases above cited.

Interest has been aptly defined as "the natural growth, or incident of money and bears the same relation to it that rent does to land": *Woerz v. Schumacher,* 161 N. Y. 530, 536, 56 N. E. 72. Damages for the detention of money under the circumstances here present should be measured by what the money so detained would have produced if it had been delivered to those entitled to it. 25 Corpus Juris Secundum, p. 536, sec. 52, makes this statement: "Interest will be denied where there are reasons founded on the conduct of plaintiff or other special circumstances existing in the case and the justice of the situation requires it." At p. 560, sec. 71, C. J. S. states this "general rule": "The measure of compensating damages is such sum as will compensate the person injured for the loss sustained, with the least burden to the wrong-doer consistent with the idea of fair compensation".

In *Agnew Co. v. Board of Education,* 83 N. J. Equity 49, 89 A. 1046, the Court of Chancery of New Jersey held that the City of Paterson was liable for interest only at a rate conformable to the rate it would have had to pay a bank on the money it "detained" because it had been enjoined from paying the amount due on a certain contract. It fixed the rate at 4% (the legal rate of interest in New Jersey is 6%). In Vice-Chancellor STEVENSON'S opinion appears the following: "The questions relating to the charge and allowance of interest in this case are difficult. It is well said in 16 Am. & Eng. Ency. of Law (page 922) that 'there is no subject in the law with reference to which there is greater conflict and confusion in the cases than that of interest.' Unless a case

be found which is a conclusive authority establishing a precedent, the safest way for a court of law or equity is to decide all questions pertaining to interest according to the plainest and simplest considerations of justice and fair dealing. I do not think that there is any case in New Jersey which controls any of the points relating to interest, to be adjudicated in this case. . . . It should be borne in mind that the whole tendency of courts of law and courts of equity for a considerable period of time has been to break away from hard and fast rules and charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case. . . . I do not think that it would be just to compel the City of Paterson to pay 6 percent interest when it has been able at all times to borrow at 4 per cent. Nor do I think that the claimants are entitled to greater interest than that which is charged against the city. . . . It is notorious that money has been worth only 4 or 5 per cent in the way of interest."

In *Cook v. Fowler et al.*, L. R. 7, H. L. 27-38 (14 English Ruling Cases 546), it was held that where a written security is given for the payment of money at a certain day, with interest up to that day, and the sum secured and the interest thereon are not paid at the day, the principal and interest become from that time a debt which, when recovered by legal process, may, in the discretion of a jury or of the Court, be made the subject of an additional liability, which, however, is not properly a liability to interest according to the contract, but to damages for the breach of it. The Lord Chancellor (Lord CAIRNS) in announcing the decision said: "Any claim, in the nature of a claim for interest after the day up to which interest was stipulated for, would be a claim really not for a stipulated sum and interest but for damages, and then it would be for the tribunal before which that claim was asserted to consider the position of the claimant, and the sum which properly and under all the circumstances should be awarded for damages." Lord

HATHERLY, concurring, said that the case had been well put "by my noble and learned friend on the woolsack; namely, to treat the case . . . as a claim to damages in consequence of the default of payment, and . . . to allow interest at the rate of four per cent".

In the instant case "the plainest and simplest considerations of justice and fair dealing" require that an allowance be made for the detention of the proceeds of the insurance policies, *not as interest eo nomine but by way of damages*. We take judicial notice of the fact that during the period of this detention, money could not be *safely* invested so as to yield a return of six per cent a year, and that if the Trustee had delivered the proceeds of the insurance policies to the Trustees under the will and the latter had followed the testator's directions "to hold and invest the same and keep the same safely invested" the investments would not have yielded more than 2½% a year. We, therefore, reduce the award of the court below, of interest at 6% a year to damages for detention at the rate of 2½% a year, beginning one year from the date the Trustee collected the proceeds of the insurance policies, until the award's payment.

The appellant-trustee claims it is entitled to the usual compensation as trustee and a reasonable allowance for counsel fee for its defense of the trust. We agree with the court below that there should be *no* commissions allowed to the trustee because, as Judge STEARNE pointed out in his opinion: "By violating the plain terms of the trust instrument the trustee has caused all of the present litigation, with its attendant expense and delay. Had the trustee performed its duty and paid the proceeds to the executors, they in turn would have accounted for the money, and all questions would have been settled and adjudicated." However, in fairness to the trustee it should be stated that there is no ground to impugn its good faith in this matter. Its failure to carry out the terms of the trust was obviously *un*intentional. The fact that it was also one of the trustees under Kenin's

will tends to explain its confusion as to its duty. It should also be noted in fairness to the trustee that no case exactly like this has ever before been adjudicated by this court.

We agree with the court below that "counsel for the trustee should receive compensation" from this estate, but in the language of Judge STEARNE, speaking for the Orphans' Court: "This compensation should be solely predicated upon his duties as attorney in a usual and normal accounting. The bulk of the service of the distinguished counsel for accountant, was rendered in defending the trustee. We do not regard $5,000 a proper counsel fee for supervising the collection of approximately $100,000 cash, and for preparing an account and attending the audit. $1,000 is more than ample compensation for such a service. Doubtless $5,000 is a most modest compensation for the tremendous labor involved in this litigation, but whatever may be the value of such service, it must be borne by the trustee alone. We accordingly allow $1,000 as compensation to counsel for accountant, as a proper charge against this fund."

The decree of the court below as herein modified is affirmed at the cost of the appellant, The Pennsylvania Company for Insurances on Lives and Granting Annuities.