## Saurman Estate

Before Sinkler, P. J., Klein, Bolger, Hunter and Lefever, JJ.

*Edward M. David,* for exceptant.

*Cornelius C. O'Brien,* contra.

LEFEVER, J., February 1, 1952.—Thomas M. Fetzer died testate on May 24, 1934. Annie Saurman died intestate on June 6, 1939. Ellen M. G. Saurman died intestate on November 17, 1941. Letters testamentary in the Fetzer Estate were granted to J. Wallace Hensler on May 29, 1934, and letters of administration in the two Saurman estates were granted to him on August 20, 1942.

One half of the Fetzer Estate passes through the estate of Annie Saurman to the estate of Ellen M. G. Saurman. Likewise, the estate of Annie Saurman goes to the estate of Ellen M. G. Saurman.

After years of litigation before the register of wills and in this court, J. Wallace Hensler filed accounts in these three estates which were finally called for audit before Judge Hunter. As he aptly stated in his adjudication:

"The accountant undertook the settlement of the Fetzer Estate without the advice of counsel. His transactions in administration of the three estates were confused and hard to understand. He withdrew $3,600 in cash from the Fetzer account in the Philadelphia Saving Fund, and did not open a bank account in the name of the estate. . . . He made some distribution and placed the balance of the cash in his own safe deposit box. It was not until many years later, on June 10, 1946, that he opened an account in the Fidelity-Phila-

delphia Trust Company, in trust for the six heirs, naming them. . . .

"The accounts which he filed in the three estates were put down for hearing and audit no less than eight times between June 1946 and May 17, 1951.

"On the latter date revised accounts in the three estates were prepared under the advice of counsel and filed in the respective estates. Certain assets which had been omitted have been included in the revised account in the Fetzer Estate, with a corresponding increase in the other estates. . . .

"There has been unconscionable delay and irregularity in the settlement of these estates, and the fault is entirely the accountant's. If he had conducted his administration according to law and the rules of this court, prepared proper accounts and promptly filed them, all the confusion which required the attention of numerous counsel and the court since 1946 would have been avoided, and the parties would long since have received their rightful share in distribution. The accountant cannot give as an excuse his ignorance of orphans' court practice. He should have sought the advice of counsel. He cannot plead inexperience because his employment is that of settlement clerk in the real estate department of a prominent trust company and he is familiar with ordinary business practice in the handling of money."

Judge Hunter surcharged the accountant as follows:

1. His commissions as executor or administrator in each of the three estates.

2. All premiums on his administrator's bond in the two Saurman estates, except for the first year of administration.

3. Interest at six percent on the balance for distribution from August 20, 1943 (one year after the grant of letters), in the estate of Ellen M. G. Saurman—the

surcharge was limited to this estate so as to avoid duplication; and

4. All interest and penalties which might be assessed for delay in the payment of inheritance tax in the two Saurman estates.

The accountant in effect conceded his liability to surcharge generally. However, he took the position that subsequent to June 1946 he was studiously endeavoring to settle the various points of litigation with the beneficiaries of those estates; that the delay after that date was equally the fault of the beneficiaries; and that, therefore, he should not be surcharged for his conduct beyond June 1946. Accordingly, the accountant excepted to: (1) the disallowance of credits for premiums on his administrator's bonds from 1946 to 1951; (2) the surcharge for all interest upon the balance for distribution after June 1, 1946, and (3) the surcharge for interest and penalty on inheritance taxes prior to August 20, 1943.

We have carefully reviewed the record in these estates and agree with the findings of the learned auditing judge upon which he based his surcharge.

The amount of interest to be paid by fiduciaries in surcharge cases "shall be determined by the Orphans' Court, under all the circumstances of the case, but shall not, in any instance, exceed the legal rate of interest for the time being": Fiduciaries' Act of June 7, 1917, P. L. 447, sec. 44(b).

"There is no statutory requirement that damages for the detention of funds be measured by the legal rate of interest for the period of the detention. . . . Damages for the detention of money under the circumstances here present should be measured by what the money so detained would have produced if it had been delivered to those entitled to it.": Kenin's Trust Estate (No. 1), 343 Pa. 549, 563 (1942).

Accordingly, interest on surcharges has been assessed at two and one-half percent (Kenin's Trust Estate, supra); at four percent (Lewis Estate, 349 Pa. 455 (1944) and Stirling's Estate, 342 Pa. 497 (1941)), and remitted entirely under the specific circumstances: Thomas v. Waters, admr., et al., 350 Pa. 214 (1944).

It appears that the accountant and his counsel made efforts, from June 1946 to date, to settle the various matters in litigation in these estates. `Although this effort does not minimize the fact that the accountant's early misconduct was the cause for delay with respect to the final disposition of these estates, it is a mitigating circumstance which warrants some consideration in determining the rate of interest for which accountant is liable on the surcharge based upon the whole period of time during which distribution has been delayed. Moreover, we are mindful of interest rates and the return generally on trust funds during this period. We concur in main with the learned auditing judge's action, which was a matter within his discretion but, with his express assent and approval, we conclude that there are sufficient circumstances here present to warrant the reduction of the rate of interest to three and one-half percent upon the balance for distribution from August 20, 1943, to the date of final distribution in the estate of Ellen N. G. Saurman, deceased. Accordingly, the adjudication is so modified and exceptions 1 and 2, as stated, are dismissed pro forma.

It is our opinion that the surcharge for interest and penalty on inheritance taxes should be assessed only from August 20, 1943 (one year after the date of the grant of letters) in the estates of Annie Saurman and Ellen M. G. Saurman. Accordingly, with the express assent and approval of the auditing judge, exception 3 is sustained.

As modified herein, the adjudication is confirmed absolutely.

President Judge Sinkler concurred in the decision in these estates, but died before completion of this opinion.