## Mailey Estate

*William J. Henrich, Jr.*, for accountants.
*William Dixon Shay, Jr.*, for claimant.
*Larrick B. Stapleton*, for Commonwealth.
*Joseph S. Ziccardi*, guardian and trustee ad litem, p.p.

KLEIN, Adm. J., October 13, 1970.—The reason for filing the present account is the death of John V. Mailey, settlor, on October 18, 1969. There has been no prior adjudication of this trust.

The relevant dispositive provisions of the indenture of trust and all other necessary facts pertaining to the

terms of the trust are set forth in the statement of proposed distribution. . .

John V. Mailey, the settlor, and his wife, Anne F. Mailey, were divorced on October 2, 1969. He committed suicide 16 days later on October 18, 1969. Two questions are submitted by the accountants in the statement of proposed distribution as requiring adjudication because of the divorce:

1. Is Anne F. Mailey to be considered a party beneficially interested in the trust and entitled to the payment of principal or income therefrom, or is she to be precluded therefrom because of her divorce from John V. Mailey prior to his death?

2. Does Anne F. Mailey, divorced spouse of decedent, have the right to proceed as cotrustee under the deed of trust?

The trustees take the position that the wife's divorce "from the settlor just prior to his death does not in any way prevent her from serving as cotrustee, nor does it exclude her from a beneficial interest in the trust." We are in full accord with these conclusions.

## RIGHT OF ANNE F. MAILEY TO RECEIVE BENEFITS

The fact that Anne F. Mailey was divorced from the settlor at the time of his death is not in itself an impediment which would prevent her from receiving the benefits given to her under the trust instrument. True, section 7(2) of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.7(2), as amended, provides that if a testator is divorced from the bonds of matrimony after making a will, all provisions in the will in favor of, or relating to, his spouse so divorced shall thereby become ineffective for all purposes. But the writing before us is not a will. It is a revocable inter vivos trust which was not revoked by the settlor. Moreover,

the trust res consists entirely of the proceeds of life insurance policies issued upon settlor's life which are expressly made "not testamentary" by section 8 of the Estates Act of April 24, 1947, P. L. 100, as added by the Act of July 11, 1957, P. L. 792, 20 PS §301.7a. It is therefore clear that section 7(2) of the Wills Act does not apply.

Two arguments can be advanced in support of the position that Anne F. Mailey is barred from receiving any benefits from the trust: (1) the distributive plan sets up a marital trust which is predicated upon Anne F. Mailey being his wife when settlor died; and (2) she is referred to in the trust instrument by the settlor as "his wife, Anne F. Mailey" and as "Anne F. Mailey, wife of settlor," thus indicating that she was to participate only if she was his wife when the trust became operative.

The provisions in the deed of trust creating a marital trust for his wife appear to be wholly inappropriate to the situation which actually existed when settlor died. Since the parties were divorced, the marital trust provided by Item First fails because the marital status did not exist when the instrument became effective. However, settlor provided in Item Second, that "after allocating to the Trust under Item First the percentage, if any, of the principal held hereunder which may be required to satisfy the provisions of Item First, *Trustee shall hold the balance of such principal in trust, and pay to settlor's wife during her life the income derived therefrom.*" (Italics supplied.)

Since the marital trust was inoperative, it follows that the entire principal becomes available for funding the trust under Item Second to furnish income to the wife for life.

It is clear that the language used in the deed of trust when referring to Mrs. Mailey, and the effect

of the divorce on the dispositive provisions thereof, raise serious questions as to what settlor's intentions were. Since we are not aware of any statutory or decisional bar to the right of Mrs. Mailey to receive benefits under the trust, we must try to construe the instrument in the light of all of the surrounding circumstances.

The guide lines to be followed in resolving questions of this nature were laid down by Mr. Justice Jones, in Erny Trust, 415 Pa. 8 (1964), in which case settlor created a trust while he was married to Agnes. Subsequently, they were divorced and he married Mary. Upon his death, the question arose whether a gift of one-half of the trust income to " 'the wife of [settlor], living at the time of his death' " went to Agnes or Mary. The court ruled that (1) the determination of the question must arise from the consideration of the language and scheme of distribution of this particular trust instrument considered in the light of all the circumstances under which this trust instrument was made; (2) there is no inflexible rule of construction or any presumption arising from the use of the word "wife"; (3) the intent of the settlor evidenced by the language and scheme of the trust instrument, viewed in the light of the circumstances in which the trust instrument was created, must control; (4) the identification of the person intended by the word "wife" must be determined by the language and scheme of the particular instrument viewed in the light of the circumstances existing at the time of its execution. The court concluded that the circumstances under which settlor executed this trust deed, and his scheme providing for the ultimate disposition of the one-half share of the income given to the "wife of settlor," initially leads to the conclusion that he intended by the word "wife" the only "wife" he then knew, Agnes.

In the present case, the settlor and his wife were

married on July 2, 1949. Seven children were born of the marriage, ranging in ages from nine years to 20 years. They all reside with their mother in a common household and she supports them. One of the children has a chronic kidney condition and another requires costly schooling by reason of severe reading problems. The settlor was an alcoholic and his drinking ruined his marital relationship. He tried very hard but unsuccessfully to control his illness through psychiatry and Alcoholics Anonymous and was on two occasions hospitalized at the Norristown State Hospital. He took his own life in a Spruce Street hotel and left a tender, poignant holographic note which explains his feelings towards his wife and his intention with respect to the distribution of the trust he created.

The note reads:

"Dear Anne:

"Life without you and the kids is not worth living—

"No one is to blame but me. The day of the trial I decided the world would be better off without me. How someone can go from not wanting booze in the house to an animal is amazing.

"This is the only way I know to get you the money that you need and freedom from me.

"You may not believe it but I love you and the kids and always have.

"Sorry I flunked so badly but I tried and tried hard.

"The kids are something to be proud of. I hope you get a man who appreciates you and them—you were always a good wife to me—and this way you'll at least get insurance—social security, and won't have to worry about a derelict harassing you.

"You are the best thing ever happened to me and I apologize from the bottom of my heart for turning

out so badly—my only meaningful goal was to be the world's best father and husband.

"Till death us do part—which is the only parting we would know.

"I hope this is a beginning of something better for you and the kids.

"I love you all—Chris, Kev, Mike, Bren, Joey, Mellen, John.

" 'Greater Love Hath No Man' than he lay down his life—

"If you ever talk of me in the future be kind—remember planting Xmas Trees in Oreland—cutting down trees—Casey—Lady—Sailboats—summers at the shore—coloring eggs etc.

"Please have me cremated and throw my ashes in the ocean cause that's where we came from.

"I love you honey—

"Red (signed)"

It seems clear beyond doubt that the settlor loved his wife and children dearly and that his primary and overriding motivation was to protect them. His wife was, in fact, the responsible head of their household, and he obviously believed that their best interests would be served by eliminating himself as an embarrassment and a hindrance to their happiness and by placing as much funds in her hands as possible so that his family could be maintained together as a unit. His addiction to drink had made him a failure both as a husband and a father. He took the only way he thought available to him to protect his loved ones whom he had so miserably failed. He conveyed all of their jointly held real estate to his wife. A divorce was obtained not based on hatred or acrimony but as a compassionate effort to try to solve an unhappy situation. Since the res of the trust he created consisted of insurance on his life, it had very little value while he was alive. So, he took his own life. Every-

thing he did clearly evidenced his intention that he wanted his beloved Anne to receive all the income from the proceeds of his life insurance.

Moreover, we must keep in mind that testator clearly evidenced his deep concern for his wife's welfare by the following expression of intention found in Item Third of the deed of trust:

"Trustee shall bear in mind that the welfare of Settlor's wife is his primary object and that the preservation of principal for other beneficiaries is secondary and Trustee shall not be deemed to have abused its discretion if it shall decide to exhaust the principal of the Trusts herein created for her benefit."

The trust we are studying was revocable at the option of the settlor. He lived for more than two weeks following the divorce. During this period he had the absolute right to revoke the entire trust or any part of it had he so desired. His failure to do so, under the circumstances of this case, leads to the inescapable conclusion that he did not intend to deprive his wife of the benefits established for her thereunder.

## RIGHT OF ANNE F. MAILEY TO ACT AS COTRUSTEE

Item Eleventh of the deed provides:

"After the death of Settlor, ANNE F. MAILEY, wife of Settlor, upon delivery to the Corporate Trustee of her written acceptance of the office, shall be associated with FIDELITY-PHILADELPHIA TRUST COMPANY as a Co-Trustee hereunder . . . provided, however, that no Co-Trustee acting hereunder, who is also a beneficiary, shall be permitted to participate in any decision to make or withhold payments hereunder for his or her benefit of persons he or she has a legal liability to support."

As we have indicated, the question of whether a divorced spouse is entitled to receive benefits under a trust created prior to divorce is a question of settlor's intention. There is some authority for the view that the court may remove a named trustee because of circumstances not known to the settlor or not anticipated by him. For example, if it would impair the accomplishment of the purposes of the trust, or if the interest of the named trustee is adverse to that of the beneficiary, the court will not hesitate to remove him. See II Scott, Trusts, § 107.1 (3d ed., 1967), and Restatement 2d, Trusts, § 107. But this is not the present case. Here, we have determined that the settlor did not intend to deprive his divorced wife of benefits under the trust, and, for the same reasons, it follows that he did not intend the divorce to have any effect on her designation as trustee.

## CLAIMS OF SETTLOR'S CREDITORS

At the audit, Mr. Henrich, counsel for the accountants, stated that the following creditors of John V. Mailey, the settlor, presented claims against the trust estate, to which objections were made by the accountants:

| | |
|---|---|
| Commonwealth of Penna. | $479.00 |
| General Motors Acceptance Corp. | 962.34 |
| Sears Roebuck & Co. | 55.37 |
| Davis' Pharmacy | 37.42 |
| Burton's Flowers, Incorporated | 21.20 |
| Conrad Flowers | 19.25 |
| New Jersey Bell Telephone Co. | 155.50 |
| Yorktown Inn | 11.99 |
| Charles C. Parsons, M.D. | 25.00 |
| Noel Boghetti | 5.30 |
| Stockton, Bates & Co. | 450.00 |
| Atlantic Richfield Co. | 354.85 |

Larrick B. Stapleton appeared for the Commonwealth and requested that its claim be withdrawn against the trust.

As we have stated hereinbefore, the trust res consists entirely of life insurance policies issued upon settlor's life. The beneficiaries named in the deed were settlor's wife and children. The proceeds of these policies are expressly placed beyond the reach of the insured's creditors by the Act of June 28, 1923, P. L. 884, 40 PS §517, which provides:

"Section 1. Be it enacted &c., That the net amount payable under any policy of life insurance . . upon the life of any person, heretofore or hereafter made for the benefit of or assigned to the wife or children or dependent relative of such person, shall be exempt from all claims of the creditors of such person arising out of or based upon any obligations created after the passage of this act, whether or not the right to change the named beneficiary is reserved by or permitted to such person."

The fact that the policies are assigned to a trustee under the provisions of a trust deed does not make the proceeds subject to the claims of creditors. In Potter Title and Trust Company v. Fidelity Trust Company, 316 Pa. 316 (1934), the insured transferred policies in which his wife and daughter were named as beneficiaries to a trust company under the provisions of an insurance trust agreement, the proceeds to be used upon his death for the maintenance and support of his wife and daughter. Subsequent to the death of the insured, the administrator c. t. a. of his estate filed a bill in equity seeking to have the insurance trust declared void and the proceeds turned over to it for the benefit of settlor's creditors. Although the court found that the insured was insolvent at the time of executing the insurance trust agreement and had been for a considerable time

previous thereto, it dismissed the bill. The Supreme Court, in a per curiam opinion, said at pages 317-18:

"The wife and children of every man have an insurable interest in his life, and the law has always looked with favor on life insurance contracts made for their comfort and maintenance. From our earliest cases down to the present day this court has upheld and encouraged such provisions and protected them from claims of creditors: Stutzman, Admr., v. Fidelity Ins. Co., 315 Pa. 47, 49. In addition, the legislature has enacted laws for the protection of the wife and children, as beneficiaries of life insurance policies, from claims of creditors of the insured (Acts of April 15, 1868, P. L. 103, and June 28, 1923, P. L. 884), and this benefit inures to them whether the insured was solvent or insolvent, or had reserved the right to change the beneficiary: Schaeffer's Est., 194 Pa. 420; Irving Bank v. Alexander, 280 Pa. 466 . . . The creditors have no right to the fund created by the insured's death and the bill was properly dismissed."

See also Kenin's Trust Estate (No. 1), 343 Pa. 549 (1942); Provident Trust Company v. Rothman, 321 Pa. 177 (1936); Henderson Estate, 14 D. & C. 2d 638 (1958); Welch's Estate, 32 D. & C. 231 (1938).

Accordingly, the claims of the creditors are all dismissed. . .

And now, October 13, 1970, the account is confirmed nisi.